FERRIS *v.* LOYAL AMERICANS OF THE REPUBLIC.

1. LIFE INSURANCE—ACTION ON POLICY—CAUSE OF DEATH—SUICIDE—EVIDENCE—SUFFICIENCY.

In an action on a life-insurance policy, the defense being that assured died from a wound, admitted to have been self-inflicted, evidence examined, and *held*, to make a proper question for the jury, and that their determination in favor of plaintiff was not against the weight of the testimony.

2. SAME—PROOF OF LOSS—EFFECT AS EVIDENCE.

A statement in the proof of loss that assured died from a self-inflicted wound and heart failure was only effective as an admission that the wound was one of the causes of death, and as such was only an item of evidence bearing upon that issue, whence defendant was not entitled to an instruction that plaintiff was not entitled to recover unless she established by a preponderance of evidence that the proofs of loss were made under a mistake as to the facts.

3. TRIAL—INSTRUCTIONS—EMPHASIZING TESTIMONY — PROPRIETY—
DISCRETION OF COURT.

    A requested instruction in an action on a life-insurance policy
that "your verdict will, therefore, be for defendant unless
you find that the statements mentioned [in the proofs of loss]
as to the cause of death were untrue" placed undue empha-
sis upon an item of testimony, and was properly refused in
the discretion of the court.

4. LIFE INSURANCE—ACTION ON POLICY — INSTRUCTION — CURE BY
VERDICT.

    In an action on a life-insurance policy, brought by assured's
widow in her own right and as assignee of the interest of her
minor son, an instruction that the statements of plaintiff in
the proof of loss might be considered " as admissions binding
herself, but not as an admission binding the minor son whose
interests she represents" was followed by a verdict for plain-
tiff. *Held*, that whether the instruction was erroneous in
stating that the admission would not bind the interest of the
minor son was immaterial, the jury having shown by their
verdict that they disregarded the admission entirely.

5. SAME—PRESUMPTIONS—CAUSE OF DEATH—INSTRUCTIONS—PREJ-
UDICE.

    Where, in an action on a life-insurance policy, the issue was
whether a wound, admitted to have been self-inflicted, was
one of the causes of death, an instruction that the presump-
tion of law is against suicide, and that defendant must show
by a fair preponderance of evidence that the cause of death
was suicide, was equivalent, under the issue, to a statement
that the burden rested upon defendant to show that the self-
inflicted wound caused death, and as such was not prejudi-
cial, defendant having stated, in its own requests, that the
burden was upon it to show that deceased came to his death
through a self-inflicted wound.

Error to Kent; Wolcott, J. Submitted November 15,
1907. (Docket No. 51.) Decided May 1, 1908.

Assumpsit by Addie M. Ferris against the Loyal
Americans of the Republic on a policy of insurance.
There was judgment for the plaintiff, and defendant
brings error. Affirmed.

*Kleinhans & Knappen* (*S. W. Dixon*, of counsel), for appellant.

*McKnight & McAllister* and *Don. E. Minor*, for appellee.

This action is brought to recover upon a policy of insurance issued by defendant insuring the life of Marion L. Ferris, plaintiff's husband. The policy is payable to plaintiff and her two sons,— one of whom was a minor. Between three and four a. m., June 22, 1905, while the insured was insane and suffering from fatty degeneration of the heart, he arose from his bed and severed what is known as the anterior external carotid vein on the left side of the neck. The wound was about one and one-fourth inches long and about one-half an inch deep. The insured lost an amount of blood estimated by the plaintiff to be a pint. The hemorrhage was speedily stopped and the insured removed to a hospital. There his wound was dressed and a saline injection given him. The next day he took nourishment three times and was so much improved that it was hoped he would recover. He became much worse on the evening of the 22d and died early in the morning of June 23d, of what the physician testifies to have been the same trouble that he had had for two years. The proof of loss sworn to by the attending physician contains the following questions and answers:

"*Q.* Did you attend the deceased during his last illness?
"*A.* Yes.
"*Q.* For what disease?
"*A.* Meningitis and fatty degeneration of the heart.
" *Q.* What disease was the immediate cause of death?
"*A.* Self-inflicted wound and heart failure.
" *Q.* How long in your opinion did deceased suffer from this disease?
"*A.* Heart had been bad since January 16th, 1905."

Plaintiff obtained an assignment of the interest of the

other beneficiaries in the policy and brought this suit to recover for the loss. The issue was tried before a jury. The trial court charged that there could be no recovery,—

"If the wounds inflicted by himself [the insured] hastened death and caused him to die sooner than he would have done had the wounds not been inflicted.   *  *  * In such case it would be suicide no matter if it only hastened his death for a very short time only."

Under this charge—which for the purpose of this case we will assume to be correct, though we by no means affirm its correctness—the jury rendered a verdict in plaintiff's favor. Defendant asks a reversal upon grounds which will be hereafter discussed.

CARPENTER, J. (*after stating the facts*). The first and most important question in this case is raised by defendant's claim that the undisputed testimony in the case proves that the self-inflicted wound hastened the death of the insured. All the testimony which tends to show the cause of death was given by the attending physician, Dr. Ardiel. There is no doubt that from Dr. Ardiel's testimony the jury might have inferred that the wound did hasten death. It is also true as defendant contends that Dr. Ardiel does not explicitly testify that the wound did not hasten the death, but the inference that it did not may none the less be legitimately drawn. As heretofore stated, he does explicitly testify that he died from heart failure, the same disease from which he had suffered for two years, and that "several times during my attendance on Mr. Ferris I would not have given him five minutes, but he seemed to recover from the attacks due to the treatment and stimulation." It is the theory of the defendant that the loss of blood or shock resulting from the self-inflicted wound had an effect in aggravating the heart failure and hastening the death. I think it may fairly be said of Dr. Ardiel's testimony that he negatives that theory. As to the loss of blood he testifies:

" The effect of loss of blood depends entirely on the individual.    It did affect him a little, certainly.    It also depressed his vital force a little, and the pulse was a little bit fast.    I do not think it tended to depress the nervous system nor to excite it; if anything I think it would relieve it.    We often use blood letting to relieve congested conditions, excitement and also heart trouble, for weakness of the heart, and sometimes where we want to relieve the tension on the heart.    For that purpose we commonly take out a pint.    It is a well recommended course of treatment for fatty degeneration of the heart if the heart is failing and dilated from too much blood.    But it is not for that alone, depending entirely on the situation. If the depression is so the heart is failing we often resort to blood letting.    It is sometimes a desirable course of treatment in case of meningitis, but not always for a depressed nervous condition.    *    *    *

" Q.  Was this hemorrhage he had of sufficient character to cause death?

"A.  No, sir, I do not think so.    *    *    *    An injection of saline solution into the circulatory system after a great loss of blood would take the place of the spent blood as far as the action of the heart was concerned."

Respecting the shock he testified:

" His nervous system was in accordance with the rest of his bodily symptoms; it was dull.

" Q.  When the nervous system is what is known as dull, is it as susceptible to shock as nervous system in a normal condition?

"A.  No, sir, I don't think it is.    *    *    *

" Q.  Was there any shock there of sufficient character to cause his death, in your judgment?

"A.  Well, I think that if he had been dying from shock he would have died immediately with the hurt that he had."

Defendant argues that notwithstanding the foregoing testimony we should infer that Dr. Ardiel holds the opinion that the self-inflicted wound was one of the causes of death because he testified that he had not altered his judgment in any substantial manner since he made the proof of loss.    This argument assumes that by this testimony Dr. Ardiel intended to reaffirm his statement that the

self-inflicted wound was one of the causes of death. This assumption is unfounded. The doctor testifies:

" In the death report   *   *   *   signed by me I simply gave a history of the case so that there would be nothing hidden from anybody.   It was not the death certificate at all.   There I stated self-inflicted wound and heart failure. I stated the facts in the case there just simply to give a history of the case as it was, and the cause of death.   I told the coroner what I got down there was heart failure, and I have never had occasion to change my mind."

I agree with the learned trial judge that the question of whether insured died by suicide was a proper question for the jury to determine, and I agree, too, that their determination cannot be said to be against the weight of the testimony.

2. Complaint is made because the trial court refused to charge as requested by defendant:

" Unless you find that plaintiff has established by a preponderance of evidence that the proofs of loss filed with defendant were made under a mistake as to the facts, your verdict must be no cause of action."

It is insisted that this request should have been given because in the proof of loss it is stated that the self-inflicted wound was one of the causes of death.   This statement was an admission (*New York Central Ins. Co.* v. *Watson*, 23 Mich. 486; *Castner* v. *Insurance Co.*, 50 Mich. 273; *John Hancock Mut. Life Ins. Co.* v. *Dick*, 117 Mich. 520; *Wasey* v. *Insurance Co.*, 126 Mich. 119) and we do not think that it was anything more than an admission.   See above authorities and 2 Bacon on Benefit Societies and Life Insurance (3d Ed.), § 471.

As an admission it was merely an item of testimony— an item which under some authorities (see *Hanna* v. *Insurance Co.*, 150 N. Y. 526) would have controlling weight in the absence of other testimony—tending to prove that the self-inflicted wound caused death.   The issue for the jury's determination was whether the self-inflicted wound did cause death.   As we have already

indicated, there was testimony upon which the jury could have determined this issue either in favor of plaintiff or in favor of defendant. The admission in the proofs of loss was, as already stated, only an item of evidence bearing on this issue. As an item of evidence it was entitled to weight, but not to controlling weight. The jury might find that the admission was made deliberately and not through a mistake and nevertheless be convinced by other testimony that the self-inflicted wound did not cause death. It follows therefore that defendant was not entitled to have the jury charged as requested that "plaintiff was not entitled to recover unless she established by a preponderance of evidence that the proofs of loss were made under a mistake as to the facts." In support of this conclusion we cite *Supreme Lodge K. of P.* v. *Beck*, 36 C. C. A. 467.

Defendant complains because the trial court declined to charge as it requested, "your verdict will, therefore, be for defendant unless you find that the statements mentioned as to the cause of death were untrue." The giving of this request would have placed an extraordinary emphasis on this statement in the proofs of loss—a mere item of testimony. In general it may be said that the giving or refusal of such requests rests in the discretion of the trial court. The point under consideration is governed by that general rule.

The trial court charged the jury that the statements of plaintiff in the proof of loss may be considered "as admissions binding herself, but not as an admission binding the minor son whose interests she represents." Defendant contends that the statement that this was an admission not binding the interest of the minor son was erroneous. We do not think it necessary to determine this question. It is to be assumed that the jury gave proper weight to the admission as evidence against the original claim of Mrs. Ferris, and as they allowed that claim, it follows that they found some good reason for disregarding that item of testimony. They have therefore decided

after due consideration that this item of testimony does not control their verdict.    This is a decision which informs us that the alleged error was harmless.    For it is impossible to conceive that if the jury had been charged, as we now assume they should have been, viz., that the admission had the same force as evidence against the interest of the minor son as it had against the original claim of Mrs. Ferris, that the verdict would have been thereby affected.    That conception would require us to believe— and this is an impossible belief—that the jury would give to that admission as evidence against the interest of the minor son greater weight than as evidence against plaintiff herself.

3.  The trial court charged the jury:

"Now it is a rule of law that where a death may be attributed either to suicide or to natural causes, the presumption of law is against suicide.    The burden of proof therefore is on the defendant to show by a fair preponderance of evidence that the cause of death of Mr. Ferris was suicide."

Defendant contends that the first sentence above quoted should not have been given in this case, because the undisputed testimony proves that the insured was insane. If the issue in this case had been:  Did the insured himself inflict the wound herein described? there would be force in defendant's contention.    That however was not an issue submitted to the jury by the learned trial judge. He told them that the insured did inflict that wound. The issue submitted to the jury was whether the self-inflicted wound caused death, and the language of the charge under consideration related to that issue.    It was equivalent to saying to the jury this, viz., "that the burden rested upon defendant to prove that the self-inflicted wound caused death," and the jury must have so understood it.    So understood, defendant cannot complain that it was erroneous because in his own requests it stated "the burden of proof is upon defendant to show that the

member, Marion L. Ferris, came to his death through a self-inflicted wound."

No other question demands consideration.

The judgment is affirmed.

GRANT, C. J., and BLAIR, HOOKER, and MCALVAY, JJ., concurred.