MINAH CONSOLIDATED MIN. Co., Limited, *v.* BRISCOE *et al.*

(*Circuit Court, D. Montana.* August 10, 1891.)

1. ESCROW—DELIVERY—EVIDENCE.
    Where defendants, under a contract to sell certain mining lands to plaintiff, delivered a deed thereto to a third person as an escrow, and later delivered a duplicate deed to an agent of plaintiff, which was recorded, it is competent for defendants to show that such deed was intended only as an escrow, and was given to enable plaintiff, by recording it, to apprise subsequent purchasers of its rights in the property.

2. EQUITY—RESCISSION OF CONTRACTS.
    A contract provided that defendants would sell certain mining lands to plaintiff, on condition that the latter would deposit £51,000 sterling with defendants in trust for plaintiff, issue to defendants a large amount of the capital stock of plaintiff corporation, deposit the proceeds of the mines in trust in a certain bank, and pay to defendants £20,000 sterling, upon receipt of which plaintiff was to be "entitled to take possession of and operate said mines upon and after date," the payments to be made on or before a certain date. *Held*, that where plaintiff paid the £20,000 sterling, and there is some evidence that it delivered a portion of its capital stock, and the proceeds of the mine were delivered at the bank as agreed, and defendants allowed plaintiff to remain in possession nearly four months after its failure to perform the other conditions, plaintiff, having been ousted by defendants, is entitled to recover possession, and defendants, having made no offer to place plaintiff *in statu quo*, cannot rescind the contract.

3. SAME—EVIDENCE.
    The fact that such contract was introduced by defendants, and was not a part of plaintiff's evidence, will not prevent plaintiff from recovering possession, since a defect in plaintiff's case may be supplied by defendants.

At Law.

Action by the Minah Consolidated Mining Company, Limited, against John O. Briscoe and Annie E. Briscoe, to recover possession of certain mining lands.

*Cullen, Sanders & Shelton*, for plaintiff.
*Thomas C. Bach*, for defendants.

KNOWLES, J. This is an action in the nature of an ejectment prosecuted to recover the possession of certain mining grounds. It is alleged in the complaint that plaintiff is a corporation duly organized under the laws of the united kingdom of Great Britain and Ireland, and that the defendants were and are residents and citizens of the state of Montana; that on the 12th day of September, 1890, plaintiff was the owner and seised in fee and possessed of the Iron Dollar quartz lode mining claim, and the Annie B quartz lode mining claim, both of said claims being situated in Jefferson county, Mont., and being specifically described by metes and bounds; that on said day defendants ousted plaintiff from the possession of said claims, and, without plaintiff's consent, now withhold the possession thereof from it. Defendants deny the ownership and possession as above set forth, and the allegation that plaintiff is entitled to the possession of said claims, and the ouster by the defendants of plaintiff. Plaintiff introduced in evidence a deed from defendants to plaintiff of the said claim. Being in possession of plaintiff, the presumption is that the deed was duly delivered by defendants to plaintiff. But, after considering the evidence in this case, I am satisfied that defendants did not intend to make an absolute and unqualified delivery of this deed to plaintiff. It is true that the deed was delivered to Mr. Cullen, the agent of plaintiff. But this delivery was not made with the view of having the deed then take effect and act as a conveyance of the said property to plaintiff at that time. There had been a previous agreement between plaintiff and defendants, which provided that the deed to this property, among other papers, should be delivered to the City Bank, Limited, of London, to be held by it in escrow. It is evident to me from the evidence that plaintiff, before it complied with a portion of the agreement of purchase made by it with defendants, which provided for the payment in this purchase of said claims of £20,000 sterling to the Second National Bank of Helena, Mont., desired that this deed, which was to be placed, as above stated, in escrow, should be recorded, to the end that any subsequent purchasers of said property from defendants might be put upon inquiry as to the rights of plaintiff in said premises; hence, as it appears, there was a request sent by telegram that another, a duplicate, deed should be executed and recorded, which should take the place of the one then in the hands of said City Bank, Limited, of London. Taking all the evidence together, I am satisfied it was understood that this deed, recorded as above stated, should be placed, like the deed it was to take the place of, in escrow, the same as the other deed. Certainly there is nothing in the evidence to show that it was understood by defendants that there was to be any other modification of the agreement of sale than that the deed was to be recorded.

The question is here presented as to whether defendants, having, as a matter of fact, delivered this deed to Mr. Cullen, who was the agent

of plaintiff, can show under what conditions and with what under-standing it was delivered to him, and by evidence show that, although placed in his hands, it was not with a view of vesting, at the time, plaintiff with the title to the said premises, but to the said Cullen, with a view of having it substituted for the former deed, and having it placed in escrow, as that had been done. The delivery of a deed is a fact which may be proven by parol, and, while this can be proven, I can see no difficulty in showing all of the facts connected with the delivery, to the end that the intention of the parties to the delivery may be made known. The notion that, having shown the fact of placing a deed in the possession of a grantee, a grantor cannot show, as between him and the grantee, what additional facts there may be connected with this delivery, with the view of qualifying or explaining the same, is not supported by any valid legal reason. Justice demands, in such cases, that the whole truth should be known, and the intention of the parties ascertained, and, when this intention is made known, full force and effect given it. I think the following authorities will be found to sustain this view: *Brackett* v. *Barney*, 28 N. Y. 333–341; *Gilbert* v. *Insurance Co.*, 23 Wend. 43; *Fairbanks* v. *Metcalf*, 8 Mass. 230.

With this view of the facts, and the law upon this point, it is evident that the legal title did not vest in plaintiff by virtue of this deed. The question is then presented as to whether plaintiff, having failed to establish a title in fee, can recover upon proof of possession with a right of possession. In the case of *Morton* v. *Folger*, 15 Cal. 275, the supreme court of California used this language:

"By this we understand the district court to have held that, where a party relies upon documentary evidence of title and prior possession, if he fails in the former he cannot succeed upon the latter,—a proposition of law that cannot be maintained. The two kinds of evidence are only different means of attaining the same result,—the establishment of a right in the plaintiff to the premises as against the defendant. Both may be resorted to, and the failure of either will not impair the just force and effect of the other."

The supreme court, in the case of *Burt* v. *Panjaud*, 99 U. S. 180, held that a plaintiff in ejectment, on evidence of prior possession, could recover in certain cases. The evidence shows that on the 12th day of September, 1890, plaintiff was in the actual possession of the premises in controversy; and that on that day defendants entered upon the same, and ousted plaintiff therefrom, and took possession thereof, and has since held this possession. With the purpose of justifying this action, defendants introduced in evidence a contract they, with others, had entered into for the sale of said premises. In this contract is this clause:

"It is also further agreed that on receipt of the said twenty thousand pounds sterling (£20,000) by the Second National Bank of Helena, Montana, or cabalistic advices of deposit to their credit in the said City Bank, Limited, of London, that the said parties of the second part shall be entitled to take possession of and operate said mines upon and after that date."

It fully appears from the evidence that this £20,000 sterling was received upon this contract from plaintiff, and defendants received the

benefit of the same, and that in pursuance of this stipulation, subsequent to the receipt of this money, plaintiff was placed in possession by these defendants of said premises.

It may be urged that this contract was introduced on the part of the defendants, and was no part of the plaintiff's evidence.   True, but plaintiff had shown its actual possession, and this contract was introduced with the view of explaining and limiting this possession.   In fact, however, it justified this possession of plaintiff, and showed it was rightful. A defect of proof in plaintiff's case may be supplied by defendant. *Harwood* v. *Marye*, 8 Cal. 580.   A person who has received possession of land under a contract of purchase, which contract gives the right of possession, is entitled to maintain the same.   A vendee, if entitled to possession under the contract of purchase of land, may defend his possession at law.   *Railroad Co.* v. *Mudd*, 59 Cal. 585.   Unless prevented by some other consideration, plaintiff is entitled to the possession in dispute.

Defendants urge, however, that by the terms of the above contract, in the event that the said payments, contracts, etc., named therein, should not be made and deposited by the second party, this plaintiff, on or before the 10th day of March, 1890, then, and in that event, the said contract should be null and void, and the City Bank, Limited, of London, should return to the said Second National Bank of Helena, Mont., all of the deeds, papers, documents, etc., deposited by the said Second National Bank of Helena, Mont., and transmitted by them.   What were the payments, contracts, etc., to be made and deposited by plaintiff in the said City Bank, Limited, of London, on or before March 10, 1890?   (1) There was to be a payment of £20,000 sterling.   (2) There was to be £75,000 sterling of full-paid capital stock of plaintiff issued to James E. Stiles and John O. Briscoe,—to the former 61,465 shares, and to the latter 68,535 shares.   (3) An agreement to the effect that the proceeds of the mine or mines sold to the plaintiff should be placed in the Second National Bank of Helena, Mont., in trust, and in the name of E. D. Edgerton, president of said bank, as trustee for each and both of the parties to that contract of sale.   (4) That there should be deposited in said City Bank, Limited, of London, the sum of £51,000 sterling of the capital stock of plaintiff issued to and to stand in the name of John O. Briscoe, for himself and as trustee of the other parties of the first part to said contract of sale, subject to be delivered to plaintiff, or such parties as it might designate, upon the deposit in said bank of the sum of £30,-000 sterling, with 10 per cent. interest from date of said contract.   If not taken by plaintiff or the persons it should designate on the 1st of January, 1891, to be delivered to said Briscoe.

It fully appears from the evidence that plaintiff paid as agreed the said £20,000 sterling.   There is some evidence that some of the capital stock of plaintiff was delivered to defendants, exactly how much does not appear.   The evidence shows that the proceeds derived from working of said mining ground were delivered to said Second National Bank of Helena, Mont., under the agreement specified in the contract of sale of said premises.

It will be seen from what I have stated that there was not a failure on the part of plaintiff to perform all the provisions of the contract of sale. Part, at least, of the provisions therein were performed. Whether or not all were not performed does not satisfactorily appear. But let it be admitted that only a part of the provisions of that contract were complied with, that in fact that part only which provided for the payment of the £20,000 sterling was performed, and can we consider this contract of sale null and void, and the defendants have the right to enter and take possession of the premises in dispute? In Bishop on Contracts (section 616) we find this:

"In spite of what we have thus seen to be the true meaning of the word 'void,' it is often used, both in law writings and in statutes, in the sense of 'voidable.' Nor is such use quite without reason, for a voidable thing is void whenever the party entitled chooses to avoid it."

In the case of *Carpenter* v. *Insurance Co.*, 16 Pet. 495, the supreme court held that, while a contract might be said to be void for a breach thereof, it was in fact only voidable at the election of the party who had committed no breach, and was a subsisting contract until avoided or rescinded by the party without fault. It is often said that a contract is void for fraud. The true rule is better expressed by the language that a contract is voidable for fraud at the election of the party defrauded. Hence, notwithstanding the language of the contract is that the contract shall be null and void if the plaintiff fails to comply with the terms of said contract named above, I think it should be considered as voidable only at the election of defendants. There is another point worthy of notice, and that is that it is not said that the contract shall be null and void if one of the stipulations plaintiff entered into should not be performed by it, but if it should fail to perform all the stipulations referred to. If plaintiff, by failing to perform one of the stipulations required of it in the above contract, had the power to render the whole of that contract null and void, in what condition would it leave the parties thereto? There is no provision that plaintiff should forfeit the £20,000 sterling it had paid defendants. Would not plaintiff have a right to have this returned to it? It is true, defendants might have some right to damages from a breach of contract, but this would be an uncertain sum, and might not equal but a small portion of the £20,000 sterling. If the contract should be made null and void by the act of plaintiff electing not to perform the same, in what condition would plaintiff be in regard to the possession of the premises in dispute? A trespasser from the beginning? But as I have found, and as it appears to me from the evidence, plaintiff was put into possession of these premises under the terms of this contract, and after the time (when, it does not fully appear) that all the said provisions thereof agreed to be performed by plaintiff had at the time been fully complied with. If the contract was null and void at that time, plaintiff had no right to the possession of the premises. But plaintiff was allowed to remain in possession and operate that mining property from about the 18th day of March, 1890, to the 12th day of September of that year, as though that contract was in full force. The practical construction made of that contract by the parties was that it

was not null and void, and I think the proper legal construction of it is that it was not void, but only voidable, if the breaches complained of existed, at the election of defendants. But, if the defendants elected to rescind this contract for the alleged breaches, could they do so by entering upon the premises in dispute, and taking the possession thereof from plaintiff? Before a party can rescind a contract for a breach of its conditions, he must, if possible, place the other party in the condition he was when the contract was entered into.

In the case of *Bohall* v. *Diller*, 41 Cal. 535, the supreme court of California said:

"When a vendee has so failed to perform a contract that the vendor may elect to treat the contract as rescinded, it is incumbent on the vendor, in order to work that result, to restore to the vendee whatever he has paid on the contract."

In the case of *Gay* v. *Alter*, 102 U. S. 79, the supreme court held that a party who wishes to rescind a contract for non-performance of a part of the contract by the other party must return to the other party what he has received from him. Although this decision was made under the Louisiana Code, in the case of *Andrews* v. *Hensler*, 6 Wall. 254, it was held that this was the same rule as prevailed at common law.

In the case of *Davison* v. *Van Lingen*, 113 U. S. 40, 5 Sup. Ct. Rep. 346, in referring to a contract, the supreme court said: "A breach of it by one party justifies a repudiation of the contract by the other party, if it has not been partially executed in his favor,"—clearly intimating, if it had been partly executed in favor of a party who seeks to rescind it, he could not do it. In the case of *Marble Co.* v. *Ripley*, 10 Wall. 339, the supreme court said:

"That one party to an executory contract, partly executed, has violated his engagements, is generally not sufficient reason for a decree by a court of equity, at a suit of the other party, that the contract shall be annulled."

The defendants, not having offered to return to plaintiff what they had received from it, cannot elect to declare said contract null and void.

The contract being still in existence, and plaintiff having received the right of possession thereunder, and been placed in possession in pursuance of that contract, could not be ousted therefrom by defendants, and is entitled to recover the same back from defendants. By the terms of the contract, plaintiff was not only entitled to the possession of said mining property, but the right to operate said mines after receiving possession thereof; and it also appears that the proceeds it received from operating said mining property was to be placed by it in the Second National Bank of Helena, Mont., with the view of liquidating the sum of £10,000 sterling agreed to be paid by it to defendants out of the proceeds of the mine. Hence I am of the opinion that plaintiff is entitled to the net profits defendants received from working said mining property after they took possession thereof from plaintiff, which, from the evidence, would appear to be $7,500. Judgment is therefore ordered that plaintiff have possession of said premises, and $7,500 as rents, issues, and profits.