# PENN MUT. LIFE INS. CO. v. SPAULDING.

No. 4604.   Opinion Filed June 22, 1915.

Rehearing Denied July 27, 1915.

(150 Pac. 494.)

1.   **INSURANCE—Presumption—Suicide.**  Upon an issue of suicide, self destruction is never presumed.

2.   **SAME—Action on Policy—Burden of Proof.**  In an action upon a life insurance policy, where the defense is the suicide of the insured, the burden of establishing self-destruction by a preponderance of the evidence is upon the insurer.

3.   **TRIAL—Issues—Questions for Jury.**  Where the minds of reasonable men may differ as to the legal sufficiency of the evidence, the jury, and not the court, must determine the issue.

(Syllabus by Bleakmore, C.)

*Error from District Court, Muskogee County;*
*R. C. Allen, Judge.*

Action by R. F. Spaulding, administrator of the estate of Lee Spaulding, deceased, against the Penn Mutual Life Insurance Company.   Judgment for plaintiff, and defendant brings error.   Affirmed.

*Stephen C. Treadwell* and *Locke & Locke,* for plaintiff in error.

*John Watkins* and *W. W. Noffsinger,* for defendant in error.

Opinion by BLEAKMORE, C.   This case, presenting error from the district court of Muskogee county, was brought on the 19th day of April, 1912, by the defendant in error, administrator of the estate of Lee Spaulding, as plaintiff, against the plaintiff in error as defendant, to recover upon a policy of insurance on the life of Lee Spaulding, payable in the event of his death to his wife,

Maud Spaulding, should she survive him, otherwise, to his executors, administrators, or assigns. The parties will hereafter be referred to as they appeared in the trial court.

The policy in suit, which was issued December 7, 1910, contains the following provisions:

"In consideration of the application of this policy, which is made a part hereof, the Penn Mutual Life Insurance Company insures the life of Lee Spaulding (the insured), near Muskogee, county of Muskogee, State of Oklahoma, in the sum of two thousand dollars, for the period of ten years from December 7th, 1910, and promises to pay at its home office, in the city of Philadelphia, unto Maud Spaulding, his wife, if she survives him, otherwise to his executors, administrators or assigns, the said sum insured, upon receipt of due proof of the death of the insured, during the continuance in force of this policy, upon the following conditions, namely." Case-made 7.

"This policy and the application therefor, a copy of which is attached hereto, constituting the entire contract between the parties, shall be incontestable after one year from its date of issue, except for nonpayment of premiums; but in case of suicide, whether sane or insane, within one year from the date of this policy, the liability of the company shall be limited to the amount of the premium paid thereon." Case-made, 10.

It is alleged in the petition that Lee Spaulding died on June 19, 1911, and that Maud Spaulding did not survive him. The answer contains a general denial, and the allegation that the death of the insured was by suicide. Defendant offered to confess judgment for the amount of the premium paid and interest. There was judgment for the full amount of the policy.

Defendant assigns the following as error:

"I.   The court erred in refusing the defendant's specially requested instruction No. 1, directing the jury to return a verdict in its favor.

"II.   The court erred in charging the jury as follows: '(2) It is manifest that self-destruction cannot be presumed. So strong is the instinctive love of life in the human breast, and so uniform the efforts of men to preserve their existence, suicide cannot be presumed. The plaintiff is therefore entitled to recover, unless the defendant has, by competent evidence, overcome this presumption and satisfied the jury, by a preponderance of evidence, that the injuries which caused the death of the insured were intentional on his part.'

"III.   The court erred in charging the jury as follows: '(3) If you find from the evidence that the body of the deceased was found under such circumstances that death may have resulted from negligence, accident, murder, or suicide, the presumption is against suicide as contrary to the general conduct of mankind, a gross moral turpitude not to be presumed in a sane man.'

"IV.   The court erred in charging the jury as follows: '(4) The court instructs the jury that in determining the issue as to whether or not the deceased, Lee Spaulding, committed suicide, you must take into consideration the condition of the deceased in life, that is, his domestic and social relations, his financial means or circumstances, his health and the state of his mind, as such matters are disclosed by the evidence introduced herein.'

"V.   The court erred in charging the jury as follows: '(5) You are further instructed, that the law presumes against self-destruction, and if, from the evidence adduced in this case, the death of said Lee Spaulding may be explained on any theory which excludes that of suicide, it is your duty to adopt such other theory and reject that of suicide. And if you are unable to determine, from

the evidence adduced, whether said Lee Spaulding did or did not commit suicide, the presumption of law that he did not weighs in favor of the plaintiff herein, and in such event you must find that said Lee Spaulding did not meet his death by self-destruction.'

"VI. The court erred in charging the jury as follows: '(2) It is manifest that self-destruction cannot be presumed. So strong is the instinctive love of life in the human breast, and so uniform the efforts of men to preserve their existence, suicide cannot be presumed. The plaintiff is therefore entitled to recover, unless the defendant has, by competent evidence, overcome this presumption and satisfied the jury, by a preponderance of evidence, that the injuries which caused the death of the insured were intentional on his part. (3) If you find from the evidence that the body of the deceased was found under such circumstances that death may have resulted from negligence, accident, murder, or suicide, the presumption is against suicide as contrary to the general conduct of mankind, a gross moral turpitude not to be presumed in a sane man. (4) The court instructs the jury that in determining the issue as to whether or not the deceased, Lee Spaulding, committed suicide, you must take into consideration the condition of the deceased in life, that is, his domestic and social relations, his financial means or circumstances, his health and the state of his mind, as such matters are disclosed by the evidence introduced herein. (5) You are further instructed that the law presumes against self-destruction, and if, from the evidence, adduced in this case, the death of said Lee Spaulding may be explained on any theory which excludes that of suicide, it is your duty to adopt such other theory and reject that of suicide. And if you are unable to determine, from the evidence adduced, whether said Lee Spaulding did or did not commit suicide, the presumption of law that he did not weighs in favor of the plaintiff herein, and in such event you must find that said Lee Spaulding did not meet his death by self-destruction.'

"VII. The court erred in overruling the motion of plaintiff in error for a new trial for that said motion should have been granted because of the errors mentioned in the preceding specifications of error and pointed out in sa·d motion.

"VIII. The court erred in overruling the motion of the plaintiff in error for a new trial for that said motion should have been granted because the verdict and judgment was not sustained· by sufficient evidence, but was contrary to the great preponderance of the evidence."

The insured died within one year from the date of the policy. If his death was by suicide the liability of defendant· was limited to the amount of the premium paid (for which it offered to confess judgment); if the death was from any other cause the liability was the full amount of the policy.

Defendant pleaded suicide, and on it rested the burden of proving such to be the fact. From the evidence it appears that at the time of his death, Lee Spaulding, about 26 years of age, resided on a farm some four miles from Muskogee, Okla., with his wife, Maud, and two infants of one and three years. The wife was again *enceinte*. Although it appears that some three years before there had been differences and misunderstandings between them, and after the death of deceased his father stated that they had contemplated separating, yet in their then domestic relations there was nothing apparently unusual or inharmonious; his social intercourse was pleasant; he was not shown to have had any personal enemies; and was not in financial difficulties. His was just the common life of the ordinary young man of his class. He had arranged to entertain a number of friends and neighbors at his home with an ice cream supper or festival on the night of June 19, 1912. About 1 o'clock

on that day he assisted his younger brother, who was going to Muskogee to procure the ice cream, to hitch his team to a wagon. This was the last time he was seen alive by any witness. Shortly before sundown a friend, who resided some four miles distant, and who had been invited to the entertainment, and to spend the night at the insured, arrived at his house. The three-year-old child was on the porch just without the door, which was closed by a screen only. Within the room about two feet from the door lay the dead body of Maud Spaulding. She had been shot twice, once through the head and once through the body. The wounds were powder burned, and where the ball entered the body a hole some four inches in diameter was burned in her clothing. On a pallet near the mother's corpse sat the younger child. Some four feet from the body of the wife was the husband, dead, the body resting on the feet and knees with head lying in a pool of blood in the seat of a rocking chair, the arms and hands loosely hanging. There was a gunshot wound in the forehead, the ball having ranged backward through the head and lodged just underneath the skin. The skull was fractured, indicating (as the witness testified) violent concussion, and that the ball had been fired at close range; and at the point of entrance the flesh was powder burned beneath the skin. The ball was found to be flattened. When the body was moved a pistol clotted with blood dropped from it to the floor. This pistol had three empty chambers and by the smell of powder gave evidence of having been recently fired; also there was oil on it, shown to have worked out of the cylinder. The pistol was afterwards appraised and sold by the administrator as a part of insured's estate. One bullet was found on the floor. Two balls, one extracted

from the head of insured, and the other, which had passed through and was found under the body of the wife, upon be.ng weighed, were found slightly different in weight, the one that passed through her body being six grains the heavier. The pallet upon which the body was sitting lay between the two bodies and was smooth and unruffled. The room also contained a bed, dresser, commode, sewing machine, table upon which were dishes or vases, etc., all apparently undisturbed. A search of the premises outside the house, made almost immediately after the tragedy was discovered by the father and the neighbor who first saw the bodies, revealed nothing unusual in the way of tracks or otherwise.

In Chamberlayne's Modern Law of Evidence, sec. 1053, it is said:

"Among propositions of experience relating to the proper conduct of mankind is that men love life, and therefore instinctively avoid obvious danger. This inference as to what is proper can, as a matter of necessity, have weight only in the absence of evidence of the actual. * * * It follows that where a deceased person was sane at the time of his death the *prima facie* inference ar.ses, so far as these facts of death and sanity are concerned, that the death was not self-inflicted."

Suicide is never presumed. The authorities uniformly announce that the presumption arising from the general conduct of mankind is that a sane man will not take his own life. But this presumption is rebuttable, prevailing only until overthrown by evidence; and the requisite evidence may consist of physical facts so clearly inconsistent with such presumption as to entirely overcome it. While the rule is well established in this jurisdiction that where the evidence reasonably tends to support the verdict the same will not be disturbed on ap-

peal, the necessary corollary is that where the evidence fails to reasonably sustain the verdict this court will not hesitate in the performance of its duty to set it aside.

In *Reed Gro. Co. v. Miller*, 36 Okla. 134, 128 Pac. 271, the rule was held to be:

"Inferences of fact are to be deduced by the jury whenever there is evidence from which an existence of facts sufficient to support a verdict may be inferred. But a verdict which is altogether unsupported by evidence, or against the uncontradicted evidence and every legitimate inference deducible therefrom, will not be upheld."

In *El Reno Gas & Elec. Co. v. Spurgeon*, 30 Okla. 88, 118 Pac. 397, it is said:

"Plaintiff in error, having established by undisputed evidence its second ground of defense as contained in its answer, and which constitutes a complete defense to the cause of action of defendant in error, it follows that the trial court erred in overruling the motion to direct a verdict for plaintiff in error." *Cedar Rapids Nat. Bk. v. Bashara*, 39 Okla. 482, 135 Pac. 1051; *Solts v. Southwestern Cotton Oil Co.*, 28 Okla. 706, 115 Pac. 776.

The sole issue of fact in this case is whether the wound which caused the death of insured was self-inflicted. Upon this question the evidence is largely circumstantial, and there is but slight conflict; the only room for contention being as to what conclusion should be drawn from the uncontroverted facts. By the verdict the jury found that the death of insured was not by suicide.

It is urged that no motive is shown why insured should have committed suicide. Experience teaches us that men do take their own lives. And while it is oftentimes true that the motive of suicide remains undiscovered, and there appears no reasonable hypothesis

upon which the act can be accounted for, and the absence of motive for the doing of a thing so contrary to the law of nature affords no reason for ignoring the established facts surrounding the death, yet these facts are for the jury to consider in determining how it occurred and whose act caused it.

To disturb the verdict we must hold that the decision reached by the jury is against the uncontradicted evidence and every legitimate inference deducible therefrom, that the insured did in fact intentionally take his own life, and that upon this point the evidence is so conclusive that the minds of reasonable men may not differ. This we cannot do.

"Where the minds of reasonable men may differ as to the legal sufficiency of the evidence, the jury and not the court must determine the issue." *Atwood v. Washington Water Power Co.,* 79 Wash. 427, 140 Pac. 343; *Union Inv. Co. v. Rosenweig,* 79 Wash. 112, 139 Pac. 874.

In *Mutual Life Ins. Co. v. Ford* (Tex.), 130 S. W. 769, it is said:

The verdict "must stand, unless the evidence establishes that the shooting was intentional to that degree of conclusiveness which precludes a reasonable doubt to the contrary, that there must be no room for fair and reasonable minds to reach different conclusions from the evidence."

The following cases, involving actions upon insurance policies where the defense was suicide, in which, after considering varied facts and circumstances attendant upon death, verdicts similar to the one in the instant case were upheld, may be instructive: *Bohaker v. Travelers' Ins. Co.,* 215 Mass. 32, 102 N. E. 342, 46 L. R. A. (N. S.) 546; *Travelers' Ins. Co. v. McConkey,* 127 U. S. 661, 8 Sup. Ct. 1360, 32 L. Ed. 308; *Grand Lodge v.*

*Banister*, 80 Ark. 190, 96 S. W. 742; *O'Connor v. M. W. A.*, 110 Minn. 18, 124 N. W. 454, 25 L. R. A. (N. S.) 1244; *Krogh v. Modern Brotherhood*, 153 Wis. 397, 141 N. W. 276, 45 L. R. A. (N. S.) 404; *Accident Life Ins. Co. et al. v. Bennett*, 90 Tenn. 256, 16 S. W. 723, 25 Am. St. Rep. 685; *Leman v. Manhattan et al.*, 46 La. Ann. 1189, 15 South. 388, 24 L. R. A. 589, 49 Am. St. Rep. 348; *National Union v. Fitzpatrick*, 134 Fed. 694, 66 C. C. A. 524; *Supreme Lodge v. Beck*, 181 U. S. 49, 21 Sup. Ct. 532, 45 L. Ed. 741; *Ingersoll v. Knights of Golden Rule* (C. C.) 47 Fed. 276; *Conn. Ins. Co. v. McWhirter*, 73 Fed. 450, 19 C. C. A. 519; *Lampkin v. Travelers' Ins. Co.*, 11 Colo. App. 256, 52 Pac. 1043; *Travelers' Ins. Co. v. Sheppard*, 85 Ga. 802, 12 S. E. 34; *Mutual, etc., Co. v. Wiswell*, 56 Kan. 770, 44 Pac. 998, 35 L. R. A. 267, and note; *Travelers' Ins. Co. v. Nicklas*, 88 Md. 473, 41 Atl. 907; *Burnham v. Interstate, etc., Co.*, 117 Mich. 148, 75 N. W. 447; *Stephenson v. Bankers' Life*, 108 Iowa, 640, 79 N. W. 460; *Spruill v. Northwestern, etc.*, 120 N. C. 149, 27 S. E. 42; *Ins. Co. v. Bennett*, 90 Tenn. 261, 16 S. W. 724, 25 Am. St. Rep. 688; *Walcott v. Metropolitan, etc., Ins. Co.*, 64 Vt. 228, 24 Atl. 995, 33 Am. St. Rep. 926; *Travelers' Ins. Co. v. Melick*, 65 Fed. 182, 12 C. C. A. 544, 27 L. R. A. 631; *Carnes v. Iowa, etc., Men's Assn.*, 106 Iowa, 284, 76 N. W. 684, 68 Am. St. Rep. 308; *Royal Arcanum v. Brashears*, 89 Md. 630, 43 Atl. 868, 73 Am. St. Rep. 248; *Warner v. Accident Ass'n*, 8 Utah, 439, 32 Pac. 697; *Cronkhite v. Travelers' Ins. Co.*, 75 Wis. 120, 43 N. W. 732, 17 Am. St. Rep. 185; *Mutual Life Ins. Co. v. Kelly*, 114 Fed. 268, 52 C. C. A. 154; *Campbell v. Fidelity et al.*, 109 Ky. 661, 60 S. W. 495; *McMaster v. N. Y. Life et al.*, 99 Fed. 878, 40 C. C. A. 119; *Standard Life Ins. Co. v. Thornton*, 100 Fed. 586,

40 C. C. A. 564, 49 L. R. A. 116; *Sharland v. Washington Life Ins. Co.*, 101 Fed. 213, 41 C. C. A. 307; *Jenkins v. Pacific et al.*, 131 Cal. 124 63 Pac. 181; *Supreme Lodge et al. v. Foster*, 29 Ind. App. 347, 59 N. E. 882.

In our opinion the instructions of the court fairly state the law applicable. The judgment of the trial court should therefore be affirmed.

By the Court: It is so ordered.