## SUPREME LODGE KNIGHTS OF PYTHIAS OF THE WORLD v. BECK.

### (Circuit Court of Appeals, Ninth Circuit.  May 16, 1899.)

EVIDENCE—SHIFTING BURDEN OF PROOF.

Where a defendant in an action on a policy of life insurance pleads as a defense that the insured committed suicide, by reason of which the policy became void, the burden of establishing such defense rests upon the defendant throughout the trial. The fact that the plaintiff introduces in evidence the proofs of death furnished the defendant, containing the statement that the insured committed suicide and the verdict of a coroner's jury to that effect, while such evidence is entitled to its weight, and, standing

alone, would establish the fact of suicide prima facie, does not shift the burden of proof on the issue, so as to require the plaintiff on the whole case to prove, by a preponderance of evidence, that death resulted from other causes.

In Error to the Circuit Court of the United States for the District of Montana.

Albert I. Loeb, for plaintiff in error.

C. B. Nolan, for defendant in error.

Before GILBERT, ROSS, and MORROW, Circuit Judges.

ROSS, Circuit Judge. On the 1st day of April, 1895, one Frank E. Beck made application for membership in the endowment rank, Knights of Pythias, which is the insurance branch of that society's business. The application was accepted. The applicant's wife, Lillian H. Beck, the defendant in error here, was named as beneficiary. The by-laws of the society pertinent to the present case provide:

"If the death of any member of the endowment rank heretofore admitted into the first, second, third, or fourth class, or hereafter admitted, shall result from suicide, either voluntary or involuntary, whether such member shall be sane or insane at the time, or if such death shall be caused or superinduced by the use of intoxicating liquors, narcotics, or opiates, or in consequence of a duel, or at the hand of justice, or violation or attempted violation of any criminal law, then the amount to be paid upon such member's certificate shall be a sum only in proportion to the whole amount as the matured life expectancy is to the entire expectancy at date of admission to the endowment rank; the expectation of life based upon the American Experience Table of Mortality in force at the time of such death to govern." \

On the night of the 31st day of October, 1896, by the discharge of a double-barreled shotgun, which Beck at the time carried, he was killed. A coroner's inquest was held, and the verdict declared that the insured "came to his death, on the 31st of October, 1896, by shooting himself in the head with a double-barreled shotgun, with the purpose and intent of committing suicide, while temporarily insane, due probably to the use of intoxicants; that he threatened to kill his wife before killing himself." Pursuant to the by-laws of the society, proofs of death were presented to it, which were signed and sworn to by the beneficiary, in which the statement was made that the death of the insured was caused by suicide. Annexed to the proofs was a copy of the coroner's verdict, together with a certified copy of the testimony upon which it was based. In due time, after the presentation of the proofs of death, a tender of $138 was made by the society, which was refused, and thereafter the present suit was commenced against the plaintiff in error to recover the sum of $3,000, which was the amount of the insurance. While the complaint alleges that the plaintiff furnished the defendant with proof of the death of the insured, it contains no mention of the manner of his death. In defense of the action, the defendant alleges "that the death of said Beck resulted from self-destruction, and that he committed suicide; that, prior to said Beck taking his own life, said Beck was attempting to violate, and did violate, the criminal laws of the state of Montana." The answer made a tender to the plaintiff of $138, and asked that the defendant be dismissed with its costs. The case came on for trial before the court with a

jury, and resulted in a verdict for the plaintiff in the sum of $3,000.

It is first claimed on behalf of the plaintiff in error that there is no evidence to sustain the verdict; in other words, that the court should have directed a verdict for the defendant. A careful examination of the evidence and consideration of the circumstances surrounding the killing satisfies us that the trial court would not have been justified in doing so, but that it was a case proper to be submitted to the jury, under appropriate instructions.

Complaint is next made of instructions given and refused, the substance of which complaint is that because, in the proofs of death presented by the beneficiary, which were introduced in evidence by the plaintiff, were the verdict of the coroner's jury and the statement of the beneficiary to the effect that the deceased committed suicide, the burden which theretofore rested on the defendant to prove that fact, which it alleged, as a defense, was thereby shifted, and that it then became incumbent upon the plaintiff to show, by a preponderance of evidence, that the death of the deceased was from accident or natural causes. Undoubtedly the preliminary proofs furnished the defendant by the plaintiff, and introduced in evidence by her, constituted prima facie proof that the deceased committed suicide, and, standing alone, would have defeated any recovery on her part. But they were of such a nature as that, since it was not made to appear that the insurer was prejudiced in its defense by relying upon the representations contained in the proofs, it was open to the plaintiff to show by other proof, or by the facts and circumstances of the case, that those representations were made under a misapprehension of the true facts, or in ignorance of material matters subsequently ascertained. Insurance Co. v. Newton, 22 Wall. 32; Hanna v. Insurance Co., 150 N. Y. 526, 44 N. E. 1099; Walther v. Insurance Co., 65 Cal. 417, 4 Pac. 413. In all cases where such showing is satisfactory, such an admission is overcome. The burden of proof and the weight of evidence are, as said by the supreme court of Massachusetts in Bridge Co. v. Butler, 2 Gray, 132, "two very different things. The former remains on a party affirming a fact, and does not change in any aspect of the cause; the latter shifts from side to side in the progress of a trial, according to the strength and nature of the proofs offered in support or denial of the main fact to be established." In Heinemann v. Heard, 62 N. Y. 455, the court of appeals of New York said:

"During the progress of a trial, it often happens that a party gives evidence tending to establish his allegation,—sufficient, it may be, to establish it prima facie,—and it is sometimes said that the burden of proof is then shifted. All that is meant by this is that there is a necessity of evidence to answer the prima facie case, or it will prevail; but the burden of maintaining the affirmative of the issue involved in the action is upon the party alleging the fact which constitutes the issue, and this burden remains throughout the trial."

See, also, Spencer v. Association, 142 N. Y. 509, 37 N. E. 625; Scott v. Wood, 81 Cal. 398, 22 Pac. 871; Clark v. Hills, 67 Tex. 141, 2 S. W. 356; Powers v. Russell, 13 Pick. 76; Tarbox v. Steamboat Co., 50 Me. 345; Nibl. Ben. Soc. & Acc. Ins. § 336.

We are of opinion that the burden assumed by the defendant, in its answer, of proving that the deceased came to his death with sui-

cidal intent, remained on the defendant, and that it did not devolve upon the plaintiff to prove, by a preponderance of evidence, that his death resulted from the accidental discharge of the gun.

It is further claimed on the part of the plaintiff in error that the court should have directed the jury to return a verdict for the defendant, on the ground that the death of the deceased should be treated as one "in violation or attempted violation of the criminal law." There are two answers to this point, either one of which is sufficient: First, the allegation of the answer is not that Beck's death resulted from the violation or attempted violation of any criminal law of the state of Montana, but only that at some indefinite time, "prior to said Beck taking his own life, said Beck was attempting and did violate the criminal law of the state of Montana." In the next place, while the evidence showed that, very shortly prior to the time that he was killed, he was engaged in unlawful acts, it did not show with sufficient clearness that he was so engaged at the time he met his death as to justify the court in taking the case from the jury. The judgment is affirmed.