GRAND LODGE OF ANCIENT ORDER OF UNITED WORKMEN *v.* BANISTER.

Opinion delivered October 1, 1906.

1. TRIAL—WHEN CASE PROPERLY SUBMITTED TO JURY.—Where the facts proved in a case are such that men of reasonable intelligence may honestly draw therefrom different conclusions on the question in dispute, the case was properly submitted to the jury for determination, instead of directing·a verdict. (Page 194.)

2. INSURANCE—DEFENSE—BURDEN OF PROOF.—Where, in a suit upon a benefit certificate, the insurer claims nonliability upon the ground that insured committed suicide, the burden of proving that fact is upon the defendant. (Page 195.)

3. EVIDENCE—PRESUMPTION AGAINST SUICIDE.—The presumption against suicide or death by wrongful act arises even where it is shown by proof that death was self-inflicted; it being presumed that death was accidental until the contrary is made to appear. (Page 195.)

4. EVIDENCE—VERDICT OF CORONER'S JURY AS TO CAUSE OF DEATH.—If the verdict of a coroner's jury that a death was suicidal was competent to prove that fact in a suit on a policy of insurance which exempted death by suicide, it did not make out a *prima facie* case of death from that cause, but at most was to be considered along with other testimony in the case. (Page 196.)

Appeal from Pulaski Circuit Court; *Robert J. Lea,* Judge; affirmed.

*Cantrell & Loughborough,* for appellant.

1.   The issue was whether or not deceased committed suicide; and the court erred in admitting the testimony of Kohlus as to the reason given by Banister for keeping the pistol in his bed. It was also error to permit him to testify as to the habit of deceased to get up at night when he heard strange noises.

2.   The evidence is insufficient to support the verdict.   The conclusion can not be reasonably drawn from the facts and circumstances that the death resulted from an accident.   The presumption that deceased did not commit suicide may be rebutted and overcome by evidence showing suicide, and this evidence may be circumstantial.   69 Ark. 659; 80 N. W. 1020; 75 N. W. 991; 72 N. W. 559; 63 N. W. 276; 22 N. Y. Sup. 1054; 29 So. 523; 69 Pac. 348; 96 N. W. 998; 80 N. W. 1020; 81 S. W. 1249; 40 Ark. 168; 11 Ark. 630; 36 Ark. 141; 34 Ark. 632; 70 Ark. 386; 56 Ark. 199.

3.   The verdict of the coroner's jury was admissible, was *prima facie* evidence of death by suicide, and shifted the burden upon plaintiff to show that the death was accidental.   1 Greenleaf on Ev. § 556; 34 S. W. 803; 22 N. E. 467; 60 Ill. App. 274; 4 Pac. 413; 95 U. S. 390; 84 N. W. 498; 41 N. E. 1002; 48 N. E. 60; Starkie on Ev. p. 404.

*Rose, Hemingway & Rose,* for appellee.

1.   Deceased's reason for keeping the pistol in his bed was material, and his own statement of the reason was competent to prove it.   3 Wigmore on Ev. § 1729 (2); 151 Mass. 161; 149 N. Y. 154; 81 Va. 787; 94 Ga. 186.   His habit to rouse from sleep in a startled or frightened condition was a circumstance for the jury to consider in determining how he came to his death. 35 Fed. 71.

2.   The legal presumption is against the theory of suicide, and in favor of accident.   When there is conflict in the evidence, or where the facts are undisputed but fair minded men may honestly draw different conclusions, the question is one to be submitted to the jury.   149 U. S. 43; 61 Ark. 555; 104 Ia. 142; 80 N. W. 1023.   Where the evidence is circumstantial, the proof of suicide must exclude with reasonable certainty every other cause of death.   49 Am. St. Rep. 348.   See also 79 N. W. 460; 61 Minn. 516; 47 N. Y. 52; 44 Pac. 996; 57 S. W. 415; 75 Wis.

116; 43 Atl. 866; 52 Pac. 1050; 16 S. W. 723; 127 U. S. 661; 47 Fed. 272; 73 Fed. 444; 32 Pac. 696; 41 Atl. 906; 75 N. W. 445; 79 N. W. 459; 142 U. S. 691.

3. The verdict of the coroner's jury was not admissible; but, if admitted, it could only go to the jury to be considered with the other evidence in the case for what it was worth. Sec. 23, art. 7, Const.; 45 Ark. 173; 49 Ark. 448; 34 Ark. 445; 58 Ark. 578; 29 So. 523; 34 Ark. 445. The weight of modern authority is against admitting the verdict of a coroner's jury in civil cases. 3 Wigmore, Ev. § 1671; 4 So. 618; 18 Pac. 855; 66 Pac. 862; 51 Pac. 488; 71 Pac. 73; 43 Atl. 368; 85 N. W. 460; 7 N. E. 408; 43 N. E. 277.

McCulloch, J. Martin L. Banister was a member of the Ancient Order of United Workmen of the State of Arkansas, a fraternal insurance society, and the holder of a benefit certificate or policy of insurance on his life in the sum of $2,000, payable to his wife, Alice Banister. He died from a pistol shot wound, and, after payment was refused this action was brought by the beneficiary to recover the amount named in the certificate.

The application for membership, which became a part of the contract of insurance, contained the following clause: "I further agree that if, within two years after the date of my taking or receiving the said Workmen Degree, my death should occur by suicide, whether sane or insane except in delirium resulting from disease, or while under treatment for insanity or after judicial declaration of insanity, then the only sum which shall be paid, or which is payable to my beneficiaries named in my beneficiary certificate, shall be the amount which I may have paid into the beneficiary fund of the order during the term of my membership."

Banister's death occurred within two years after he became a member of the order, and payment of the benefit was refused on the alleged ground that he committed suicide. The contention of the beneficiary is that the death was the result of an accident, the cause of death being the only issue in the case, and the jury found in favor of the plaintiff.

Banister was a carpenter residing in the city of Little Rock, and was in poor health for some time before his death. He had no children; his immediate family consisting only of himself and

his wife. He was a man of exemplary habits and morals, never used tobacco nor intoxicants of any kind, attended religious services regularly, and was industrious.

His wife (the plaintiff) related upon the witness stand the following circumstances attending his death, viz.:

"When he came home that night, he came in, and then went around to a little store, and got some crackers and oranges just before I put supper on. I fixed what I thought he would like to eat, and he ate his supper. He did not eat very much. He was sitting in the dining room while I was ironing in the kitchen. When I was through, I went in and was sitting down doing some darning, mending the flannels. He was through then with his figuring, and was sitting by the stove with his shoes off. He got up, and said, 'I am going to bed now.' He got up and went in. I got up a little afterwards. I guess he had plenty of time to get undressed and in bed. He is a man that goes to sleep quickly. I sat there and darned quite a little bit. I then got up and went to the kitchen, and heard the gun, and exclaimed, "What in the world have you done, dear?" I thought he had knocked it (the pistol) out of the bed. He made no reply, and I got scared, and ran out the front door, and hollered, 'Help! help! Something terrible has sure happened!' Mr. Davis came in with Mr. Engstroum. I went with them as far as the foot of the bed, and saw him take up the gun; then I lost consciousness."

Other persons, who came in immediately, testified that they found him lying on the bed mortally wounded with a bullet hole through his right temple, and that he lived about three-quarters of an hour. He was dressed in his night gown, lying on his back with his head on the pillow, his right hand lying on top of the bed cover across his waist with his fingers nearly touching the pistol. The hair on the right side of his temple was slightly singed, and the bed sheet near the spot was powder burned.

It was also proved that Banister kept a pistol under his pillow all the time, that he was very nervous, was not a sound sleeper and would frequently wake up with a start as if frightened; that he would often get out of bed to see if burglars were in the house, and sometimes he would take his pistol with him in getting up to investigate noises about the premises. There is no proof of any previous conduct or declarations on his part indicat-

80—13

ing a suicidal intention. On the contrary, one of his fellow workmen testified that when they quit work in the evening Banister said that if he was not at the appointed place on time the next morning it would be because he had gone after material; and only an hour before his death he talked over the telephone with a neighbor, asked the latter how he was getting along with building his house, and promised to go to see the house on the next Sunday.

The court permitted the defendant, over the objection of plaintiff, to introduce in evidence the verdict of the coroner's jury finding that Martin L. Banister came to his death by suicide, and the court instructed the jury that said verdict might be considered as evidence of death by suicide.

The chief insistence of counsel for appellant as grounds for reversal is that the verdict is without evidence to support it, that the undisputed evidence shows that Banister came to his death by his own suicidal act, and that the trial court erred in not peremptorily instructing the jury to return a verdict in favor of the defendant.

It is conceded that Banister's death was the result of a shot from a pistol held in his own hand. While no one saw him when the shot was fired, all the circumstances point with certainty to the conclusion that no other person could have fired the shot. The only disputed question is whether the shot was accidental or an act of intentional self-destruction. The burden of proving suicide was upon the defendant. It alleged that fact as a defense to the action, and must prove it, for until that fact is established liability of the defendant for the amount of the policy is clear.

There is no dispute about the facts which were susceptible of direct proof, but the case turns upon the conclusion to be drawn therefrom—whether or not they establish suicide indisputably. For if the facts are such that men of reasonable intelligence may honestly draw therefrom different conclusions on the question in dispute, then they were properly submitted to the jury for determination. Judges should not, under that state of the case, substitute their judgment for that of the jury. *St. Louis, I. M. & S. Ry. Co.* v. *Martin,* 61 Ark. 549.

After careful consideration of the evidence we are of the opinion that this question was properly submitted to the jury, and that there was evidence sufficient to support the verdict. Con-

ceding that the theory of death by suicide finds more rational support in the facts established by direct proof than the theory of death by accident—that there is greater probability from the evidence that death resulted from a suicidal act than an accident —still we can not say that death by suicide is the only reasonable conclusion to be drawn from the evidence. The proof does not exclude with reasonable certainty death from accidental shooting, and, the burden being upon the defendant to establish the defense by proof, it was properly left to the jury to say whether or not it was a case of suicide.

In the first place, there is a presumption against suicide or death by any other unlawful act, and this presumption arises even where it is shown by proof that death was self-inflicted—it is presumed to have been accidental until the contrary is made to appear. This rule is founded upon the natural human instinct or inclination of self-preservation, which renders self-destruction an improbability with a rational being. 19 Am. & Eng. Enc. Law, p. 77; *Travellers' Ins. Co.* v. *McConkey,* 127 U. S. 661; *Conn. Mut. Ins. Co.* v. *McWhirter,* 73 Fed. 444; *Stephenson v. Bankers' Life Assn.* (Wis), 79 N. W. 460; *Leman* v. *Manhattan Ins. Co.,* 46 La. Ann. 1189, 15 So. 388; *Home Benefit Assn.* v. *Sargent,* 142 U. S. 691; *Walcott* v. *Metropolitan Ins. Co.,* 64 Vt. 231; *Mutual Life Ins. Co.* v. *Wiswell,* 56 Kan. 765; *Supreme Council* v. *Brashears,* 89 Md. 624.

This presumption is greatly strengthened in this case by proof as to the habits and character of deceased. He was sober, industrious and religiously inclined. He was married and lived happily with his wife, and had never, so far as the proof shows, said or done anything indicating a suicidal tendency, but on the contrary almost his last utterance expressed his plans to pursue the even tenor of his life. He went to bed, after preparing himself as usual for a night's rest, and apparently fell asleep. There is not in the evidence the slightest indication of any preparation for death, and if he secretly harbored the intention of taking his own life he gave no intimation of it before death, nor left behind him any disclosure to kindred and friends. It is not impossible, nor even improbable, that the shooting was accidental. He had a self-acting revolver under his pillow which he always kept there. He was very nervous and excitable, wakeful and easily

alarmed at night. He may have been suddenly aroused by some noise, grasped the pistol and in a half awakened state pulled the trigger as he drew the pistol from beneath the pillow. This is neither impossible nor improbable, though, as already stated, it may be more probable that the shooting occurred from design, and we do not, under those circumstances, feel justified in setting aside the conclusion reached by the jury and substituting our own as to the cause of death.

Decisions *pro* and *con* are brought to our attention—and they are numerous—in insurance cases somewhat similar to this where the only issue was as to the cause of death of the insured, and wherein the weight of evidence and the presumption against suicide are discussed by the courts, but they all turn upon the peculiar facts of each case. None, so far as we discover, are in conflict with the controlling principles hereinbefore announced.

The case of *Home Benefit Assn.* v. *Sargent,* 142 U. S. 691, is strikingly like the case at bar upon the facts—even stronger in favor of the insurance company— and fully sustains us in the conclusion here reached.

It is urged that the verdict of the coroner's jury finding death by suicidal act was properly admitted in evidence, and made a *prima facie* case of death from that cause, which was not overcome by other evidence. It is also urged that the court erred in refusing to instruct the jury that the verdict of the coroner's jury was *prima facie* evidence of suicide. Inasmuch as the court permitted the introduction of the verdict of the coroner's jury at the request of appellant, we find it unnecessary to decide whether or not it was proper to do so. Some of the authorities hold that it is competent evidence. 1 Greenleaf on Ev. (15 Ed.), sec. 556; *Grand Lodge* v. *Wieting,* 168 Ill. 408; *Supreme Lodge* v. *Fletcher* (Miss.), 29 So. 523; *Metzradt* v. *Modern Brotherhood* (Iowa), 84 N. W. 498. But the weight of authority at this day seems to be against the admissibility of such evidence in civil cases of this kind. 3 Wigmore, Ev. p. 2078; *Memphis Ry. Co.* v. *Womack,* 84 Ala. 149; *Germania Ins. Co.* v. *Ross-Lewin,* 24 Col. 43; *Holister* v. *Cordero,* 76 Cal. 649; *Rowe* v. *Such,* 134 *Id.* 573; *Wasey* v. *Travellers' Ins. Co.,* 126 Mich. 119; *Cox* v. *Royal Tribe,* 42 Ore. 365.

Without, however, passing upon the question of admissibility

of the verdict of the coroner's jury as evidence of the cause of death, we have no hesitancy in holding that it does not necessarily make out a *prima facie* case of death from the cause stated in the verdict, but at most may be considered by the trial jury along with other testimony in the case. This was the ruling of the court below, and it was as favorable to appellant in this respect as we could approve.

Other assignments are made by appellant of errors of the trial court in admitting evidence of deceased's habits and statements with reference to keeping a pistol under his pillow and his reasons for doing, but we find no prejudicial error in the record.

The judgment affirmed.