## MODERN BROTHERHOOD OF AMERICA v. WHITE et al.

No. 8101—Opinion Filed Nov. 6, 1917.

(168 Pac. 794.)

**1. Evidence — Presumptions — Suicide.**
Upon an issue of suicide, self-destruction is never presumed.

**2. Insurance—Life Insurance — Defense of Suicide—Burden of Proof.**
In an action upon a life insurance policy where the defense is the suicide of the insured, the burden of establishing self-destruction by a preponderance of the evidence is upon the insurer.

**3. Same.**
Where the beneficiary in furnishing proof of death as provided by the policy forwards an ex parte statement of an acting coroner that the death of the insured was caused by suicide, the same is not sufficient to cast upon the beneficiary the burden of proving that the insured did not commit suicide.

**4. Insurance—Life Insurance — Change of Name—Defense—Assumed Name.**
The fact that the insured, many years before the date of the policy involved here, had changed his name from William M. Ireland to Henry Head Grey, by which latter name the policy of insurance was issued, is not a defense available to the company in an action brought by the beneficiary to collect thereon, as the same does not constitute a breach of warranty as provided for in the policy; for, while it is the custom for persons to bear the surname of their parents, it is not obligatory, and one may lawfully change his name without resort to legal proceedings, and for all purposes the name thus assumed will constitute his legal name just as much as if he had borne it from birth.

(Syllabus by Hooker, C.)

Error from District Court, Oklahoma County; John W. Hayson, Judge.

Action by M. Lillian White and another against the Modern Brotherhood of America. Judgment for plaintiffs, and defendant brings error. Affirmed.

Sam Sparrow and Hainer, Burns & Toney, for plaintiff in error.

T. J. McComb and Stephen C. Treadwell, for defendants in error.

Opinion by HOOKER, C. On May 26, 1908, Dr. Henry Head Grey, or William M. Ireland, then a resident of Oklahoma City, made application to the plaintiff in error for a benefit certificate in the sum of $2,000 payable at his death to his then wife, Fannie A. Grey. Question 1, or part 1, of his application and his answer thereto, was as follows: "Q. 1. Name of applicant proposed for membership. A. Henry Head Grey."

His application contained, following the foregoing question and answer, and others, and over his signature, the following agreements:

"I further declare and warrant that the above statements, together with the answers made, or to be made in other parts of this application by me to the physician, are true, and shall form the basis of my contract for membership and certificate, between me and my beneficiary and all parties who may at any time have an interest therein, and the said society. * * *

"I also agree that all the terms and conditions of the certificate hereby applied for shall be binding on me, and on any future legal holder of the same.

"I further agree that in the event of my death by suicide, whether sane or insane, any certificate that may be issued upon this application by said fraternity shall become void."

On June 16, 1908, the plaintiff in error issued to said Grey its benefit certificate payable as requested, which was accepted and retained by him until about September 11, 1912, when he surrendered it to the plaintiff in error for cancellation and requested that another be issued to him in lieu thereof, payable to his sister, Mrs. White, which request was complied with, and on September 30, 1912, the benefit certificate herein sued on was issued and delivered to him, which he accepted and retained until his death. This benefit certificate contained, among others, the following provisions:

"(1) This certificate, the articles of incorporation, by-laws, rules and regulations of this society now in force or which may hereafter be enacted or adopted, whether said subsequently enacted or adopted by-laws, rules and regulations specifically so provide or not, and the application for membership shall together constitute the exclusive contract between this society, the member and the beneficiary. * * *

"(3) If the holder of this certificate shall be expelled or suspended * * * or if said application for membership or any part thereof, or any application for restoration

or reinstatement to membership, shall be found in any respect untrue, then this certificate shall thereupon become null and void, and all money which shall have been paid, and all rights and benefits, if any, which may have accrued on account of this certificate shall be thereby absolutely forfeited."

Also, the certificate provides that:

In case of death, "if a coroner's inquest has been held, a copy of the coroner's verdict, or the verdict of the coroner's jury, properly certified, must be furnished by claimant as part of the proof of death ; provided, that in any action at law or equity brought to enforce the collection of this certificate, or any amount alleged to be due, thereunder, claimant shall not be entitled to receive nor recover interest on the amount thereof, nor in any such action shall the term 'monthly combined contribution' as used in the by-laws of this society be construed to mean an advance assessment or payment."

About March 10, 1914, insured, Henry Head Grey, or William M. Ireland, departed this life in Kansas City, Mo., and thereafter, in due time, the beneficiary, Mrs. White, furnished to the plaintiff in error the proof of death as provided for in the application and the certificate aforesaid. In the affidavit made by her, thus furnished to the company, the following questions and answers appear:

"Q. How long was deceased sick? A. Have no personal knowledge. Q. Of what disease did he die? A. Have no personal knowledge. Q. Names and addresses of all attending physicians? A. None. Q. Was a coroner's inquest held? A. No."

It appears from the record that the body of the insured was found in a room at the Blossom Hotel in Kansas City, Mo., and the manner of his death was a disputed question at issue in this case; the plaintiff in error contending that he committed suicide, and the beneficiary in said certificate disputing that fact.

A deputy coroner, who was a physician, a resident of Kansas City, Mo., was called to view the body when the same was found, and in his judgment a coroner's inquest was not necessary; therefore no inquest was held over the body, but the beneficiary, Mrs. White, at the time she furnished proof of death of the insured, forwarded to the company a statement of this deputy coroner which in substance said that the deceased came to his death by cyanide poison with suicidal intent. It is asserted by the plaintiff in error that the proof of death thus furnished by the beneficiary, Mrs. White, to the company, established a prima facie case of suicide on the part of the insured, and

that the burden thereafter rested upon the beneficiary in said certificate to establish that the insured did not commit suicide, and that the beneficiary failed to establish, by the evidence introduced upon the trial below, this fact.

It is further asserted that according to the provision of the certificate it was the duty of the beneficiary to furnish to the plaintiff in error this affidavit of the acting coroner showing the manner and the cause of the death of the deceased, and that, the same being provided for by the terms of the contract, the plaintiff in error had the right to rely thereupon and to accept the statements therein contained as true, and that the beneficiary was bound thereby, unless she should establish that the statements made in this proof of death were made under a misapprehension of the facts or in ignorance of material matters subsequently ascertained.

It is further claimed by the plaintiff in error that this certificate sued upon here was void by reason of the breach of warranty, in that the insured stated in his application that his name was Henry Head Grey, and over his own signature warranted that statement to be true, and by the terms of the contract especially agreed that, if said warranty was not true, this certificate shall thereupon become null and void; that the name of the applicant and the insured was not Henry Head Grey, but William M. Ireland, which fact was unknown to the company; and that by reason of this false representation the warranty clause of the application and certificate has been broken and the certificate thereby rendered void.

With these contentions of the plaintiff in error, we are unable to agree. By reference to the certificate, which constitutes the contract, the affidavit of the acting coroner thus forwarded by Mrs. White to the plaintiff in error at the time she made proof of death was not required by the contract, and the statements contained therein thus made by the acting coroner do not constitute prima facie proof that the insured died as a result of suicide. The certificate here involved only requires that, if a coroner's inquest has been held, a copy of the coroner's verdict, or the verdict of the coroner's jury, properly certified, must be furnished by claimant as part of the proof of death. The record here discloses that no coroner's inquest was held, hence there was no coroner's verdict, nor any verdict of the coroner's jury, and the affidavit made by the acting coroner was but an ex parte statement of his opinion as to the manner and

cause of death of the deceased, and did not and could not constitute prima facie evidence of the manner of the death of the deceased. It is not strictly a part of the proof of notice of death, and was not called for by the certificate of membership. It therefore follows that the trial court was correct in refusing to instruct the jury, as requested by the plaintiff in error, as follows:

"The court instructs the jury that the statements contained in the proof of death of the insured are binding upon plaintiffs to the extent of being prima facie evidence of the fact that said insured died in the manner and from the cause therein stated, except in so far as plaintiffs may show by competent evidence that said statements were made by mistake or under a misapprehension of the true facts."

And the court was correct in giving instruction No. 6, as follows:

"You are instructed that when a person dies the law presumes tha. he has died from natural causes, and presumes that he has not died from self-destruction. This presumption obtains unless it is overcome by evidence establishing the fact that such person committed suicide."

This court, in Penn. Mut. Life Ins. Co. v. Spaulding, 50 Okla. 307, 150 Pac. 494, says:

"(1) Upon an issue of suicide, self-destruction is never presumed.

"(2) In an action upon a life insurance policy, where the defense is the suicide of the insured, the burden of establishing self-destruction by a preponderance of the evidence is upon the insurer."

And in the body of the opinion it is said:

"Experience teaches us that men do take their own lives. And while it is oftentimes true that the motive of the suicide remains undiscovered, and there appears no reasonable hypothesis upon which the act can be accounted for, and the absence of motive for the doing of a thing so contrary to the law of nature affords no reason for ignoring the established facts surrounding the death, yet these facts are for the jury to consider in determining how it occurred and whose act caused it.

"To disturb the verdict we must hold that the decision reached by the jury is against the uncontradicted evidence and every legitimate inference deducible therefrom, that the insured did in fact intentionally take his own life, and that upon this point the evidence is so conclusive that the minds of reasonable men may not differ. This we cannot do. 'Where the minds of reasonable men may differ as to the legal sufficiency of the evidence, the jury and not the court must determine the issue.' "

The following authorities support the conclusion reached above: Royal Arcanum v. Brashears, 89 Md. 624, 43 Atl. 866; Cox v. Royal Tribe, 42 Or. 365, 71 Pac. 73, 60 L. R. A. 620, 95 Am. St. Rep 752; Craiger v. Mod. Woodmen, 40 Ind. App. 279, 80 N. E. 429; Goldschmidt et al. v. Mut. Life Ins. Co., 102 N. Y. 604, 7 N. E. 408; Mut. Ben. Ins. Co. v. Higginbotham, 95 U. S. 380, 24 L. Ed. 499.

It further appears, from the affidavit of the claimant thus sent to the company in order to establish proof of death, that she had no personal knowledge of the manner nor cause of the death of the insured, and so stated the same in her affidavit. The certificate, or policy, of insurance here provided that no liability should attach to the plaintiff in error in case of suicide of the insured. It would seem the fact that the beneficiary was making proof of death in order to establish the basis of her claim for insurance, as called for in the policy, was sufficient to inform the company that she did not approve nor ratify the statement of the acting coroner as to the manner and cause of the death of the deceased, as her own, but was merely furnishing this information in order to substantially comply with the provisions of the certificate. We are of the opinion that, as the beneficiary in this policy, she should not be held responsible for any statements made in this affidavit by the acting coroner, and she was in no manner responsible for him, but was apparently required by the terms of the certificate to procure the same. See Mut. Life Ins. Co. v. Durden, 9 Ga. App. 797, 72 S. E 295; Met. Life Ins. Co. v. De Vaults, 109 Va. 392, 63 S. E. 982. 17 Ann. Cas. 27; Maccabees v. Stensland, 206 Ill. 124, 68 N. E. 1098, 99 Am. St. Rep. 137; Travelers' Ins. Co. of Hartford v. Melick, 65 Fed. 178, 12 C. C. A. 544, 27 L. R. A. 629; Supreme Lodge K. of P. v. Beck, 94 Fed. 751, 36 C. C. A. 467.

The evidence discloses that the name of the parents of the insured was Ireland, and the name given to him was William M. Ireland, but that some time prior to 1900 he changed his name of his own accord from William M. Ireland to Henry Head Grey, and that he lived and pursued his profession in the city of Beaumont, Tex., and in Oklahoma City, Okla., for 15 years or more under the name of Henry Head Grey, by which latter name he was known at the time this benefit certificate was issued to him by plaintiff in error. Does this constitute a breach of warranty sufficient to vitiate this certificate? At the time this certificate was issued, the name of the insured was Henry Head Grey, and had so been for many years

prior thereto. The evidence discloses that was the true name of the insured, not the name which was given to him by his parents, but the name which he had adopted for many years prior thereto, and by which he was known among his associates and patients at the place where he had lived for many years. There is no question here as to the identity of the insured, and it is asserted by the defendant in error that the insured had a perfect right to change his name as he did.

This court, in Roberts v. Mosier, 35 Okla. 691, 132 Pac. 678, Ann. Cas. 1914D, 423, said:

"Although the custom is universal for all male persons to bear the name of their parents, there is nothing in the law prohibiting a man from taking another name, if he so desires; nor is there any penalty or punishment for so doing.

"A contract or obligation may be entered into by a person by any name he may choose to assume. The law only looks to the identity of the individual, and when that is clearly established the act, when free from fraud, will be binding."

And in the body of this opinion it is said:

"There appears to be no statute in this state forbidding a man adopting a name for a business purpose. Section 2246, Comp. Laws 1909; section 2067, St. Okla. 1890."

This question has been ably considered in New York, as appears from the case of Smith, Adm'r, v. United States Casualty Co., 197 N. Y. 420, 90 N. E. 947, 26 L. R. A. (N. S.) 1167, 18 Ann. Cas. 701, where the court said:

"The defendant pleaded a breach of warranty, in that 'the true name of said applicant was Myron W. Maynard,' of which fact it had no knowledge at the date of the policy, and that, relying upon said statement in the application, it 'issued said policy of insurance in the false and fictitious name of Maurice W. Mansfield.' Upon the trial it appeared that the name of the father and mother of the insured was Maynard, and that he went by the name of Myron W. Maynard until about 1892, when he was 22 years of age. He then called himself Maurice W. Mansfield, and thenceforth, until the policy was issued in 1901, almost uniformly did his business, held himself out, and was known and addressed by that name. The court charged the jury in substance that if the insured, when the application was made, had assumed and acquired the name of Maurice W. Mansfield, and regarded that as his name, * * * he had thoroughly adopted it to such an extent that you can find it was his intention that he should be known by the name of Maurice M. Mansfield and thereafter retain that name; if

you should find that he had to this extent acquired that name, then this representation in the application would not be false."

And Mr. Throckmorton, in his work on Names, says:

"It is a custom for persons to bear the surnames of their parents, but it is not obligatory. A man may lawfully change his name without resort to legal proceedings, and for all purposes the name thus assumed will constitute his legal name just as much as if he had borne it from birth."

The trial court held that the evidence introduced as to the change of the name of the insured from Ireland to Grey did not constitute a breach of warranty, and refused to submit that issue to the jury. Under the authorities above cited, we think the action of the court was correct.

Finding no error in the court prejudicial to the rights of the plaintiff in error, the judgment of the lower court is affirmed.

By the Court: It is so ordered.