BENEFIT ASSOCIATION OF RAILWAY EMPLOYEES v. JACKLIN.

Opinion delivered May 2, 1927.

1. EVIDENCE—OPINION OF NONEXPERT.—Where the defense to a suit on an accident insurance policy was that insured committed suicide, which was an excepted risk, it was not error to permit the coroner to testify as to whether sufficient time intervened between the time of shooting and his arrival at the scene thereof for some one to place a pistol under insured's hand.

2. EVIDENCE—OPINION OF NONEXPERT.—In an action on an accident insurance policy where the defense was that insured committed suicide, which was an excepted risk, and where another witness demonstrated in the jury's presence that he could use a pistol with his right hand and put it at the place where insured was

shot, it was not error to overrule an objection to the question to the coroner as to whether it would be practical for a right-handed man to shoot a pistol with his left hand.

3. APPEAL AND ERROR—ADMISSION OF EVIDENCE—HARMLESS ERROR.— In an action on an accident insurance policy, where the defense was that the insured committed suicide, which was an excepted risk, and where defendant's witness testified as to his relations with insured's wife and about going to Hot Springs with her and having a photograph taken, it was not prejudicial error to permit plaintiff to introduce in evidence the photograph of the wife and witness.

4. TRIAL—APPLICATION OF INSTRUCTION.—Where the defense to a suit on an accident insurance policy was that insured committed suicide, which was an excepted risk, an instruction that, before the jury would be justified in finding that insured committed suicide, there must be evidence from which such conclusion would be reasonable and probable, and not merely speculative or conjectural, was not erroneous as instructing that the suicide must be conclusively shown.

5. TRIAL—SUFFICIENCY OF EVIDENCE.—A question as to whether testimony is so speculative or conjectural as to entitle the defendant to go to the jury is a preliminary question for the court.

6. EVIDENCE—WEIGHT AND SUFFICIENCY.—Where testimony is admitted, it becomes a question for the jury to determine whether the thing sought to be proved thereby is shown to be reasonable and probable, and not merely speculative.

7. TRIAL—INSTRUCTION—WEIGHT OF EVIDENCE.—In an action on an accident insurance policy where the defense was that insured committed suicide, an excepted risk, an instruction telling the jury that, to defeat recovery, the evidence must be such that it would appear that suicide was probable and reasonable, *held* not erroneous as on the weight of evidence.

8. TRIAL—REFUSAL OF INSTRUCTIONS.—In an action on an accident policy where the issue for the jury was whether insured was actually killed or committed suicide, refusal of defendant's instruction that the issue was whether insured committed suicide or was murdered, and that there were presumptions against both suicide and murder, and hence presumptions were equally balanced, *held* not error under evidence.

9. INSURANCE—SUICIDE—JURY QUESTION.—Even where the proofs of death show that the deceased committed suicide, it is still a question for the jury to determine; the presumption that deceased did not commit suicide prevailing until overcome by proof to the contrary.

Appeal from Pulaski Circuit Court, Second Division; *Richard M. Mann,* Judge; affirmed.

*Rose, Hemingway, Cantrell & Loughborough,* for appellant.

*Tom W. Campbell,* for appellee.

MEHAFFY, J.   The plaintiff, the administratrix of Harvey U. Boyd, deceased, brought suit on an accident insurance policy carried by deceased with the defendant which provided for the payment of $2,000 upon loss of life resulting from bodily injury sustained through accidental means.

The plaintiff alleged that Harvey U. Boyd lost his life by accident on September 21, 1925.   That Bessie Boyd was designated as beneficiary in the policy, and that she was also shot and fatally wounded on the same day.   That plaintiff was also the administratrix of the estate of Bessie Boyd, deceased, and alleged that proof of death had been made, and asked judgment of $2,000 with interest, damages, and attorney's fees.

The answer denied that the death of Harvey U. Boyd resulted from bodily injury sustained through accidental means and that Harvey U. Boyd committed suicide, which is an excepted risk.

W. A. Lamb, the coroner of Pulaski County, testified that he was called to the Boyd home on September 21, 1925; he presented a diagram of the residence, gave the names of the persons who roomed there, and said that Mr. Boyd was lying on the floor and Mrs. Boyd was on one bed, and the children were on the other bed.   That she was lying on the side of the bed next to the wall, facing the wall, with a bullet wound in the back part of her brain that had entered and ranged to the left. That Mr. Boyd was lying on the floor, with his feet partly under the bed on the side he was alleged to have been sleeping on, with his head slightly under the edge of the bed the children were sleeping on.   That a pistol was in his hand, and a bullet wound at a point just left of the center of the back of his neck.   His right eye was bloodshot, as if the bullet had gone toward it.   The bed

clothing was on fire. Mr. Boyd had his trousers on, and Mrs. Boyd was dressed in her night clothes. That the pistol was under Boyd's left hand, and his right hand was stretched out to the right. That there was a powder-burn at the place where the bullet entered his head. It was about an inch and a half or two inches in diameter, and spread out in different directions.

Witness testified that he was experienced in cases of death resulting from pistol shots. That the pistol was against Mr. Boyd's head, and also against Mrs. Boyd's head. The flesh on his head was slightly burned. If a pistol is held back from the flesh it will not lacerate the flesh, but if it is held up against it it will explode and lacerate the flesh.

He said that most suicides followed drinking sprees or a family disturbance.

When witness arrived there he said that Mr. Clark and Mr. Herrin were there, and there were four rooms in which people were sleeping in the house, and there were doors leading into the Boyd's room from the three in which Herrin, Clark and Miss Baer were sleeping. Boyd's room was connected with four other rooms by doors.

He said he did not notice any screens being cut. The next morning he searched all of the rooms, and in Mr. Herrin's room found a handkerchief which had soot or grease on it, and red, as though it was blood. The bloody handkerchief was behind Mr. Herrin's bed.

When he arrived there Mr. Herrin was in Boyd's room. He got there between 4:30 and 5 o'clock, and he was then dressed. He did not notice whether he had his shoes laced. As he recollected, he had his collar and tie on. He was not positive whether Mr. Clark had a coat on. He was positive that Mr. Herrin did not have his hat on when he arrived. The pistol was right under Boyd's hand, on the floor. He was not clutching the pistol. Miss Baer came into the room that morning. She was fully dressed. "I can't take the pistol in my

right hand and point the muzzle of it to the place on the back of my head that corresponds to the bullet-hole in the back of Boyd's head. I will have to take it in my left hand. If I were going to shoot a pistol, I would shoot with my right hand.''

When asked if he thought it practical for a right-handed man to shoot a pistol with his left hand, he answered: ''It is not often the case. I arrived there between 30 or 40 minutes after the accident occurred. A person would have time to dress in that time, and enough time intervened for some one to have placed a pistol under the man's hand. There were several persons in the room, and, in coming to a decision, I did not confine my questions solely to the persons in the house. I went back there every day for a week to get additional information. There were powder-burns on Mrs. Boyd right around the wound at the back of her head. One of her hands was powder-burned, but I don't remember which.''

R. L. Allen testified, in substance, that he was on the Little Rock police force, and was called to the Boyd residence on the morning of the shooting. Officer Bennet went with him. There was a bullet-hole in the back of Mrs. Boyd's head. She was powder-burned and there was a little blood on her. ''The best I remember, both of her hands were powder-burned. I know that one of them was. The bullet entered Mr. Boyd's head a little to the left of center and maybe a little above the line of the hair. As I remember, his right hand was on the floor and left hand was lying across the body, and the gun was lying a little under his right hand. I found an empty bottle on the table. It was an Angostura Bitters bottle. I don't think Mr. Clark was fully dressed when we got there. Mr. Herrin was in the other room. He was fully dressed. I saw Miss Baer also. The pistol was partially under Mr. Boyd's right hand.'' He said he could put it anywhere, and demonstrated snapping the trigger twice.

A number of other witnesses testified to substantially the same facts, and there was also testimony that Mr. Boyd had been drinking, that he had had domestic troubles, and that other men had been going out with his wife and that he had remonstrated with her about this, but we do not deem it necessary to set out the testimony at length. There was a verdict against the appellant, and a motion for a new trial, which was overruled, and exceptions saved, and appeal taken to this court.

The court gave the following instructions at the request of the plaintiff, over the objections of the defendant:

"On April 22, 1924, the defendant, Benefit Association of Railway Employees, issued and delivered to Harvey U. Boyd its policy of insurance, in which policy the defendant agreed that, upon the death of the said Harvey U. Boyd during the life of said policy, if such death were caused solely through external, violent and accidental means (excluding suicide, sane or insane), the defendant would pay to Bessie Boyd, wife of the said Harvey U. Boyd, if living, otherwise to the estate of the said Harvey U. Boyd, the sum of $2,000, with the further provision that, if all monthly premiums on said policy were promptly paid on the dates due, for a period of one year or more immediately preceding such death of the said Harvey U. Boyd, then in such event the defendant should pay an additional $100 upon the occurrence of such death of the said Harvey U. Boyd. All premiums upon said policy were promptly paid upon the dates due for a period of more than one year preceding the death of the said Harvey U. Boyd. On September 1, 1925, said Harvey U. Boyd died from the effects of a gunshot wound. A few hours after his death, on the same day, his said wife, Bessie Boyd, also died from the effects of a gunshot wound. Plaintiff, Lula B. Jacklin, has been appointed and is now the duly constituted and acting administratrix of the estate of the said Bessie Boyd. The above stated facts are undisputed. The defendant

alleges, in its answer in this case, that the said Harvey U. Boyd committed suicide, and on that ground alone the defendant contends that it is not liable for the payment of the insurance under said policy.

"2. The only issue to be determined by the jury in this case is whether or not Harvey U. Boyd committed suicide. It will be presumed in law, unless and until evidence is introduced to the contrary, that the said Harvey U. Boyd did not commit suicide. The law places the burden upon the defendant to prove by preponderance of the evidence that he did commit suicide before you would be justified in so finding. Unless you find from a preponderance of the evidence in this case that the said Harvey U. Boyd in fact did commit suicide, your verdict should be for the plaintiff.

"3. If you find and believe that the evidence in this case is evenly balanced upon the question as to whether or not the said Harvey U. Boyd committed suicide, then your verdict should be for the plaintiff.

"5. In attempting to determine whether or not the said Harvey U. Boyd committed suicide, you would be authorized to take into consideration all of the proved facts and circumstances which have been testified to in this case. Before you would be justified in finding that he did commit suicide, there must be evidence from which such a conclusion would be reasonable and probable, and not merely speculative or conjectural. If you find from a consideration of all the evidence in this case that it is merely speculative or conjectural as to whether the said Harvey U. Boyd committed suicide, your verdict should be for the plaintiff.

"6. If you find for the plaintiff in this case you should find for her in the sum of $2,100, with interest thereon at six per cent. per annum from November 13, 1925, to this date."

The court also gave the following instructions:

"If you do not find from the testimony that Harvey U. Boyd committed suicide, then it is immaterial how his death occurred, and your verdict will be for the plaintiff."

The court then gave the following instructions, at the request of the defendant:

"2. You are instructed that the only question for you to decide is whether or not H. U. Boyd committed suicide. If he did, you should find for the defendant. If he did not, you should find for the plaintiff.

"7. The burden is on the defendant to prove by a preponderance of the evidence that the insured committed suicide, and by the term 'preponderance of the evidence' is meant the greater weight of the evidence.

"8. You are the sole judges of the weight of the testimony and the credibility of the witnesses, and, in passing upon the credibility of the witnesses, you may take into consideration their demeanor upon the stand, their interest in the litigation, the consistency or the inconsistency of their testimony, and any other facts or circumstances which may tend to shed light upon the truthfulness or untruthfulness of such testimony."

The court refused to give the other instructions requested by the defendant.

It is first contended by the appellant that the court erred in permitting the question asked of Dr. Lamb and his answer with reference to whether or not sufficient time intervened for some one to place a pistol under the man's hand, and also objected to the question propounded to the coroner as to whether it would be practical for a right-handed man to shoot a pistol with his left hand, and urges, as a reason why it was error to admit this testimony, that the court has always condemned liberality on the part of the trial court in letting non-expert witnesses give their opinions and usurp the province of the jury.

It may be said, in answer to this argument, in the first place that the coroner claimed to have had some experience, and, moreover, he simply made a demonstration in the presence of the jury that we think it would be proper for any one to make, and, besides that, another witness not only testified that it would be practical, but

he showed in the presence of the jury that he could use the pistol with his right hand and put it at the place where Mr. Boyd was shot. We therefore do not think there was any error committed by the trial court in admitting this testimony.

The appellant next contends that the court erred in permitting plaintiff to introduce in evidence a photograph of Mrs. Boyd and defendant's witness, Herrin. Herrin himself testified about his relation with Mrs. Boyd and about going to Hot Springs with her, and that there was never anything dishonorable between them. He had also testified, without objection, that, on the trip to Hot Springs, they went to Happy Hollow and had their picture taken, and went from there to the tower. And the effort seems to have been made to show the relation between Herrin and Mrs. Boyd, and there is quite a great deal of testimony about her going out with him and about Mr. Boyd remonstrating with her about it, and we do not think the introduction of the picture in evidence was in any way prejudicial. Mr. Herrin was present and testified about the trip to Hot Springs and about having the picture taken, and, of course, he knew whether it was accurately taken; and, whether relevant or not, it could not have resulted in any prejudice to the appellant. It could have been no more hurtful than the witnesses telling about the trip and about their picture being taken together. The appellant does not undertake to show in what way the photograph was harmful. There is no statement as to what the photograph was, how it showed the parties with reference to each other, nor any statement of fact at all by the appellant as to why the picture would not be competent, except that it had no probative force, and that it was an effort to stir the jury and excite the feeling against the appellant by such a photograph, and for that reason it was incompetent. We are unable to see how the photograph, taken as it was, could in any possible way prejudice the appellant, since the testimony was introduced without objection, showing that they went out together, went to Hot Springs together, and,

while there, went to Happy Hollow and had their picture taken together, and there was nothing more in the photograph than the testimony had shown.    We therefore conclude that it could not have been prejudicial.

The appellant's next contention is that the court erred in giving plaintiff's instruction No. 5.    The specific objection argued is that the last clause tells the jury that the evidence offered by appellant must be such that a conclusion of suicide would reasonably follow.    And counsel state in telling them that, and telling them that if, from a consideration of the evidence, it is speculative, their verdict should be for the plaintiff, and they argue that, to the untrained mind of the jury, the words "speculative" and "conjectural" have no technical meaning, and then the instructions simply meant that, unless suicide was conclusively shown, which is an impossibility with only circumstantial evidence in the case, they should find for the plaintiff.

We do not agree with the counsel for the appellant in this contention.    In the first place, the jury were supposed to be men of ordinary intelligence and could understand the difference between reasonable and probable on one hand and speculative and conjectural on the other. And the instruction does not tell the jury that, unless suicide was conclusively shown they should find for the plaintiff, and the instruction, we think, could not be construed to mean anything of the sort.    It simply tells the jury that there must be evidence from which such conclusion, that is, a conclusion that he committed suicide, would be reasonable and probable. And this does not, in any construction that could be placed upon it, mean, and it cannot mean, that, unless suicide was conclusively shown, they would find for the plaintiff.    It is true that the question as to whether the testimony is so speculative or conjectural as to entitle the defendant to go to the jury is a preliminary question for the court.    But, when testimony is admitted, then it is certainly a question for the jury to determine whether the thing sought to be proved by such evidence

is shown to be reasonable and probable and is not merely speculative.

Moreover, defendant's specific objection to the instruction is that it is an instruction upon the weight of evidence and that it placed a greater burden on the appellant than was warranted, and we cannot agree with counsel for appellant in this contention. It was in no sense an instruction on the weight of evidence, but it simply told the jury that the evidence must be such as it would appear from it that suicide was probable and reasonable, and gave the jury no intimation in any way what the court thought about the evidence or its weight, and the only burden it put upon the appellant was to show by evidence that suicide was reasonable and probable. Certainly this was not an instruction on the weight of evidence and would not be any improper burden upon the appellant. It is wholly different from the cases cited by the appellant, where the court told the jury that the defendant must establish, by a preponderance of evidence, such payment, to the satisfaction of the jury. It is never necessary, in a civil case, that a jury should be satisfied of the truth of their verdict. They may, after a thorough investigation, still not be satisfied, but there is certainly no error in telling the jury that the thing must be probable or reasonable. And the fact that there may be misgivings or doubts in the minds of the jury would not justify them in finding a thing to be true where the evidence was speculative and conjectural.

The appellant next complains because the court refused to give its instruction No. 4, which, among other things, told the jury that the issues were narrowed down to whether the insured committed suicide or was murdered, and that there are presumptions against both suicide and murder, so in this case the presumptions are equally balanced. This instruction told the jury, in effect, that the deceased committed suicide or was murdered, and we think this does not necessarily follow from the proof in this case. And it was a question for the jury to find whether he was accidentally killed, either by him-

self or some third person, or whether he committed suicide, and this would make the instruction erroneous and justify the court in refusing to give it, even if there had not been added to it the clause with reference to presumption.

One of the strongest presumptions is the presumption against suicide. This court has said: "In the first place, there is a presumption against suicide or death by any other unlawful act, and this presumption arises even where it is shown by proof that death was self-inflicted—it is presumed to have been accidental until the contrary is made to appear. This rule is founded upon the natural human instinct or inclination of self-preservation, which renders self-destruction an improbability with a rational being." *Grand Lodge of A. O. U. W.* v. *Banister,* 80 Ark. 190, 96 S. W. 742.

It will be observed that the court in the above case said that the death is presumed to have been accidental until the contrary is made to appear. Certainly one could not make it appear by offering another presumption, the presumption against murder. This court is thoroughly committed to the doctrine that death is presumed to have been accidental until it is proved, not presumed, that he died from some cause not accidental.

"The presumption is always against suicide or self-destruction on the part of a sane person who came to his death under circumstances not explained." 22 C. J. 95.

"The presumption of law is in favor of life and the natural desire and struggle to preserve rather than destroy it. The presumption is that he (plaintiff's intestate) fell into the hole accidentally, perhaps carelessly." *Milwaukee Fuel Co.* v. *Industrial Commission of Wisconsin,* 159 Wis. 635, 150 N. W. 998.

The Supreme Court of Oklahoma approved an instruction reading as follows: "You are instructed that, when a person dies, the law presumes that he has died from natural causes, and presumes that he had not died from self-destruction. This presumption obtains unless it is overcome by evidence establishing the fact

that such person committed suicide." *Modern Brother-hood of America* v. *White,* 66 Okla. 241, 168 Pac. Rep. 794, L. R. A. 1918B 520.

"The presumption was against suicide, and the burden was on the defendant." *Travelers' Insurance Co.* v. *Allen,* 237 Fed. 78.

Even where the proofs of death show that the deceased committed suicide, still it is a question for the jury to determine, and, although such proof has been made by the plaintiff, the presumption is that the deceased did not commit suicide, and that presumption prevails until it is overcome by proof to the contrary.

It was said in a case where the proof of death showed suicide: "The jury were entirely at liberty to properly find that the wound, although self-inflicted, was accidental." *Home Benefit Assn.* v. *Sargent,* 142 U. S. 691, 12 S. Ct. 332 (35 L. ed.) 1160.

The appellant complains of the court's refusal to give its instructions No. 6 and No. 9, but we do not agree with counsel for appellant that there was any error in the refusal to give these instructions. After a careful examination of the entire record we have reached the conclusion that there was sufficient evidence to submit to the jury, and that it was submitted to the jury under proper instructions, and the verdict of the jury is conclusive. The judgment is therefore affirmed.