No. 8741.

Circuit Court of Appeals, Sixth Circuit.

Jan. 8, 1942.

### AETNA LIFE INS. CO. v. NEWBERN.

No. 12126.

Circuit Court of Appeals, Eighth Circuit.

April 20, 1942.

172

S. Lasker Ehrman, of Little Rock, Ark. (John M. Lofton, Jr., Grover T. Owens, and E. L. McHaney, Jr., all of Little Rock, Ark., on the brief), for appellant.

Shields M. Goodwin, of Little Rock, Ark. (Charles T. Coleman, of Little Rock, Ark., on the brief), for appellee.

Before GARDNER, THOMAS, and JOHNSEN, Circuit Judges.

THOMAS, Circuit Judge.

This is a suit upon the double indemnity provision of a life insurance policy, the material part of which reads as follows: "If the death of the insured * * * results directly and independently of all other causes from bodily injuries effected solely through external, violent and accidental means, * * * and if such death does not result from suicide, * * * then the Company will pay a sum equal to the sum described in this policy as the sum insured [$10,000] in addition thereto."

The appellee, herein called the plaintiff, was the beneficiary named in the policy issued by the appellant, herein called the defendant, upon the life of plaintiff's husband, Thomas H. Newbern, herein called the insured.

The insured was killed on March 4, 1940, as the result of a collision between his automobile and a Missouri Pacific Railroad passenger train at a point called Sidell Crossing where the highway along which the insured was driving crosses the tracks and right of way of the railroad company. It is conceded that the policy was in force at the time of the collision and resulting death of the insured.

In its answer to the complaint the defendant denied that the insured's death resulted solely through external, violent, and accidental means, and alleged that the death of the insured was the result of suicide. At the commencement of the trial it was admitted that the insured was struck by the train on March 4, 1940; and one of the instructions to the jury requested by the defendant was that "The defendant admits that the cause of death was external and violent, but denies it was accidental."

The case was tried and submitted to a jury. A verdict was returned for the plaintiff upon which the judgment appealed from was entered. The defendant requested a peremptory instruction in its favor which the court refused.

Upon this appeal the defendant contends (1) that a verdict in its favor should have been directed and (2) that the court erred in its charge to the jury. In addition to resisting the defendant's contentions the plaintiff urges that the defendant cannot question the sufficiency of the evidence to support the verdict because it did not comply with rule 50 of the Rules of Civil

Procedure, 28 U.S.C.A. following section 723c. In the view we take of the merits it will be unnecessary for us to consider and pass upon this contention of the plaintiff. See Berry v. United States, 312 U.S. 450, 61 S.Ct. 637, 85 L.Ed. 945; Conway v. O'Brien, 312 U.S. 492, 61 S.Ct. 634, 85 L.Ed. 969; and Halliday v. United States, 62 S.Ct. 438, 86 L.Ed. ——, decided by the Supreme Court on January 19, 1942.

It will contribute to brevity in the discussion of defendant's contentions to consider first the claim that the court erred in the charge to the jury. The only part of the charge to which objection is made in this court is that portion having to do with the burden of proof. At the conclusion of the testimony the defendant requested the court to charge that the burden is upon the plaintiff to prove by a preponderance of the evidence that the death of the insured was accidental; that if the jury were unable to determine whether the death of the insured resulted from an accident or from suicide, the verdict should be for the defendant; and that if the proof is evenly balanced as to accident or suicide, the plaintiff has failed to discharge her burden and the verdict must be for the defendant.

The court refused the instructions requested by defendant and at the request of plaintiff and over the objections of the defendant charged that the plaintiff is not required to prove that the death of the insured did not result from suicide; that the burden was on the defendant to show by a preponderance of the evidence that the insured committed suicide; that if the evidence in the whole case is evenly balanced on the issue of suicide, the verdict must be for the plaintiff; and that if upon the issue of suicide the evidence is merely speculative or conjectural the verdict should be for the plaintiff.

Since the policy is an Arkansas contract the case is controlled by the law of that state. Erie Railroad Co. v. Tompkins, 304 U.S. 64, 58 S.Ct. 817, 82 L.Ed. 1188, 114 A.L.R. 1487. Whatever the law as to burden of proof may be in this type of case in other states, the instructions given by the court conform to the law of Arkansas. The settled law of that state is "that proof of death of an insured from injuries received by him raises a presumption of accidental death, within the meaning of an insurance clause insuring against injury by external, violent, and accidental means, and this presumption will continue until overcome by affirmative proof to the contrary on the part of the insurer." Metropolitan Casualty Ins. Co. v. Chambers, 136 Ark. 84, 206 S.W. 64, 67. When suicide is the defense the burden of establishing this fact is upon the defendant. Mutual Life Ins. Co. of New York v. Raymond, 176 Ark. 879, 4 S.W.2d 536. The plaintiff is not required to prove that the death of the insured did not result from suicide. Aetna Life Ins. Co. v. Taylor, 128 Ark. 155, 193 S.W. 540, Ann.Cas.1918B, 1122. See, also, Benefit Ass'n of Ry. Employees v. Jacklin, 173 Ark. 937, 294 S.W. 353; Pacific Mut. Life Ins. Co. v. Harris, 187 Ark. 772, 63 S.W.2d 219; Grand Lodge of A.O.U.W. v. Banister, 80 Ark. 190, 96 S.W. 742; Metropolitan Life Ins. Co. v. Graves, 201 Ark. 189, 143 S.W.2d 1102. There was no error in the instructions given by the court, and it was not error to refuse the requested instructions.

There remains for consideration the question of the sufficiency of the evidence to support the verdict. Upon this point the court should not substitute its judgment for that of the jury. New York Life Ins. Co. v. Redmon, 191 Ark. 1003, 88 S.W.2d 324. The familiar rule must be applied that the evidence and all reasonable inferences to be drawn therefrom must be considered in the light most favorable to the plaintiff. Chesapeake & O. Ry. Co. v. Martin, 283 U.S. 209, 51 S.Ct. 453, 75 L.Ed. 983, Coen v. American Surety Co. of New York, 8 Cir., 120 F.2d 393; Industrial Mut. Indemnity Co. v. Watt, 95 Ark. 456, 130 S.W. 532, 533. Following these rules as they are applied by the courts of Arkansas we think the verdict of the jury is abundantly supported by the evidence.

There is no substantial dispute in the evidence as to how or where the accident in which the insured lost his life occurred. It occurred on the afternoon of March 4, 1940. The insured unaccompanied was driving his Hudson automobile along a highway about 18 miles southwest of Little Rock, Arkansas, traveling north. As he crossed the right of way of the Missouri Pacific Railroad he was struck by a fast passenger train coming from the west. It was a grade crossing. The railroad is a double-track road. From the crossing for the distance of a mile west the railroad runs through a cut from 10 to 15 feet deep. The highway south of the railroad is also in a cut varying in depth. The land be-

tween the railroad and the highway south of the railroad is covered with brush and bull pine.

The crossing was rough at the time of the accident, making it necessary for one driving an automobile to slow down in crossing.

The evidence upon which the defendant relies to support the contention that insured's death was suicide is in two parts, one relating to circumstances connected with the accident and the other relating to motive.

The highway at Sidell Crossing was not the main highway but was used at one time for a detour. At the time of the accident a crew of section hands was working on the tracks approximately 700 feet east of the crossing. They were the only eyewitnesses to the collision. Seven of them were called as witnesses and testified that the automobile came onto the track and stopped directly in front of the approaching train. The engine struck the center of the automobile and carried it along until the train stopped. When the car was examined the ignition key was turned off.

There was testimony that the insured had been having trouble with his car for a few days; that it would often stop when slowed down. The engineer was dead at the time of the trial, and the fireman testified that although he was looking he did not see the insured before the collision occurred. The evidence was conflicting as to whether the engineer sounded the warning signals for the crossing.

There was testimony to the effect that on the day of the injury, but before the accident occurred, a green car resembling the insured's car had been driven back and forth over Sidell Crossing. The inference sought to be proven by this evidence was that the insured was waiting in the neighborhood to drive in front of the train when it arrived. There was other testimony, however, that the same green car was observed driving over the same crossing along the same highway on succeeding days.

To prove motive evidence was introduced to show that the insured was a salesman. He had been employed by Geyer & Adams Company, a wholesale grocery house, for 13 years. He called on and took orders for his company from 82 country merchants in a limited territory in Arkansas. He not only took orders but also collected the accounts and turned in the payments to the company. His salary was $195 a month. Three days before the accident two merchants wrote the company that they had not been given credit for payments made by them of $25.86 and $5.78 respectively. These letters were called to the insured's attention on Saturday after the company's regular sales meeting, and he was killed on the following Monday. The insured said these two accounts were the only ones out of balance and that he would rectify them on his first return trip. He wrote a letter to that effect. He was replaced, however, by another man in his territory until his accounts could be investigated. After his death a man representing both the defendant and the bonding company which carried the fidelity insurance covering the insured checked his accounts and testified that he found discrepancies in 42 of the 82 accounts aggregating $1,052.62. None of the 42 merchants was called to testify.

The insured's wife and the several people who saw and visited with the insured between Saturday when he was told of the shortage in his accounts and Monday when he was killed testified that he showed no worry, uneasiness or indication of any trouble. He was jovial with his friends and acted in his usual way. The plaintiff denied that the insured was short in his accounts and questioned the audit.

There was testimony that the insured was a man of integrity and high character. His family life was happy. He had a wife, one son and two daughters. No complaints of any irregularity had ever been made against him before the two letters were received three days before his death.

The most that can be said for the evidence tending to show that the insured committed suicide is that it made a case for the jury. Industrial Mut. Indemnity Co. v. Watt, supra; Grand Lodge of A.O. U.W. v. Banister, supra. In the case of New York Life Insurance Co. v. Redmon, supra [191 Ark. 1003, 88 S.W.2d 326], the Supreme Court of Arkansas said:

"Conceding that the theory of death by suicide finds more rational support in the facts established by direct proof than the theory of death by accident—that there is greater probability from the evidence that death resulted from a suicidal act than an accident—still we cannot say that death by suicide is the only reasonable conclusion to

be drawn from the evidence. The proof does not exclude with reasonable certainty death from accidental shooting, and, the burden being upon the defendant to establish the defense by proof, it was properly left to the jury to say whether or not it was a case of suicide."

And in the recent case of Metropolitan Life Insurance Co. v. Graves, supra [201 Ark. 189, 143 S.W.2d 1107], the Arkansas Supreme Court said that: "If it were not impossible that deceased accidentally killed himself, it was then the province of the jury to determine from the evidence whether it was an accidental killing or suicide. We said in the case of Missouri & N. A. R. Co. v. Johnson, 115 Ark. 448, 171 S.W. 478, 479: 'We will not reverse the judgment because of the insufficiency of the evidence; for, as we view this evidence, it is not physically impossible that appellee was injured as the result of stepping into an unblocked frog, although it is highly improbable that the injury was caused in that manner.' Baldwin v. Wingfield, 191 Ark. 129, 85 S.W.2d 689."

It was not a physical impossibility that the insured in the instant case could have been accidentally killed. Upon a consideration of all the evidence the inference that death was accidental is not an unreasonable one.

We have reviewed the entire record and find no error. The judgment appealed from is accordingly affirmed.